

280 N. Old Woodward
Suite 400
Birmingham, MI 48009
248.645.0000

48 S. Main Street
Suite 2
Mt. Clemens, MI 48043
586.469.1580
www.khvpf.com

May 31, 2024

Hon. John G. Koeltl            <u>VIA ECF</u>
U.S. District Court
for the Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  12007-1312

      Re:    *Authentic Brands Group, LLC, et al. v. The Arena Group Holdings, Inc., et al.*
              Case No. 24-cv-02432 (JGK)
              Defendant Manoj Bhargava's Pre-Motion Conference Request

Dear Judge Koeltl:

      Defendant Manoj Bhargava respectfully requests a pre-motion conference on his proposed Motion to Dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) in lieu of his Answer to the Complaint. The deadline for filing an answer or responsive motions is June 7, 2024. Mr. Bhargava respectfully requests permission to file the motion by that date or to receive a brief extension to accommodate the pre-motion conference process.

      This dispute arises out of a Licensing Agreement between Authentic Brands Group, LLC (and related entities, collectively "ABG") and The Arena Group Holdings for the use of certain intellectual property related to the Sports Illustrated brand. *Compl.*, R. 1, ¶ 34. Under the Licensing Agreement, ABG gave Arena a license to use, and earn revenue from, SI-related intellectual property and content. *Id.* ¶¶ 34-35. In exchange, Arena agreed to manage Sports Illustrated and to pay ABG a quarterly royalty payment of $3.75 million. *Id.* ¶¶ 36-37.

      The Complaint alleges that Arena failed to make a quarterly royalty payment on January 2, 2024. Compl., ¶ 61. On January 18, 2024, ABG terminated the Licensing Agreement, allegedly triggering Arena's $45 million termination payment obligation. *Id.*, ¶ 68. On March 18, 2024, ABG entered into a licensing agreement with a new business partner, Minute Media. *Id.*, ¶ 81. The Complaint alleges that Arena failed to cooperate with the transition of SI-related intellectual property and content to Minute Media, including by continuing to use SI-related trademarks and copyrighted material without a license. *Id.*, ¶¶ 84-110.

      Manoj Bhargava was Arena's interim CEO at the time that Arena failed to make its quarterly royalty payment but resigned that position on January 4, 2024. *Id.*, ¶ 55. He became majority shareholder of Arena on February 14, 2024. *Id.*, ¶ 76.

      The Complaint alleges 15 causes of action against Arena and Mr. Bhargava. This letter pertains only to the claims brought against Mr. Bhargava individually (Counts 1-9, 11-12, 15).

      **I.**    **Breach of Contract Claims (Counts 1-7)**

      The first seven counts of the Complaint allege various breaches of the Licensing Agreement against both Arena and Mr. Bhargava. But Mr. Bhargava is not a signatory to the Licensing Agreement and, consequently, cannot be held personally liable for breach of contract. ABG seeks to hold Mr. Bhargava personally liable by piercing Arena's corporate veil, but the Complaint alleges no facts that overcome the strong presumption of limited liability and justify disregarding the corporate

form. Under Delaware law (Arena's state of incorporation), "[p]iercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice." *Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 3337531, at *15 (Del. Ch. July 6, 2018). "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Id.* The fraud or similar injustice that must be demonstrated in order to pierce a corporate veil under Delaware law must, in particular, "be found in the defendants' use of the corporate form. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989)

To show abuse of the corporate form, Plaintiffs must show "some combination" of the following factors: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency; (5) siphoning of the corporation's funds; and (6) absence of corporate records. *Harco Nat. Ins. Co. v. Green Farms. Inc.*, Civ. A. No. 1131, 1989 WL 110537, at *4 (Del. Ch. Ct. Sept. 19, 1989). The Complaint does not allege a single fact that meets any of these factors. There is no allegation that Mr. Bhargava ignored any corporate formalities, commingled his personal funds, or undercapitalized Arena or otherwise siphoned funds. In short, the Complaint is devoid of any allegation that Mr. Bhargava abused the corporate form.

Moreover, the overarching issue is whether "the corporate structure [has] cause[d] fraud or similar injustice"—in other words, whether the corporation is "a sham and exist[s] for no other purpose than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). The Complaint does not allege that Mr. Bhargava used his purported control over Arena to perpetrate a fraud or injustice. It merely alleges, in conclusory fashion, that Mr. Bhargava "wrongfully used his domination of Arena to cause it to breach the Licensing Agreement." *Compl.*, ¶¶ 116, 124, 133, 141, 149, 160, 170. But it is well settled that a breach of contract, without more, does not supply the fraud or injustice required to pierce the corporate veil. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) ("Any breach of contract…is, in some sense, an injustice. Obviously, this type of 'injustice' is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud. The underlying cause of action does not supply the necessary fraud or injustice.").

## II. Tortious Interference with Minute Media Licensing Agreement (Count 8)

Count 8 alleges that Mr. Bhargava (and Arena) tortiously interfered with ABG's new Licensing Agreement with Minute Media by refusing to turn over ABG's licensed property and SI-related content and information. *Compl.*, ¶¶ 173-179.

This claim fails because, under New York law, in order for an individual defendant associated with a company to be personally liable for tortious interference, the plaintiff must pierce the corporate veil. *See, e.g., Westbury Recycling, Inc. v. Westbury Transfer & Recycling, LLC*, 209 A.D.3d 929, 931, 177 N.Y.S.3d 101, 104–05 (2022) (affirming dismissal of tortious interference claim against individual CEO when complaint did not allege facts sufficient to support piercing the corporate veil). Furthermore, ABG has not alleged that Minute Media actually breached its contract with ABG. *See, e.g., Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424–25, 668 N.E.2d 1370, 1375–76 (1996) (affirming dismissal of tortious interference claim when plaintiff did not allege that third party breached its contract with plaintiff). Nor has ABG alleged that Minute Media would not have breached the contract but for Mr. Bhargava's actions. *See, e.g., Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*, 82 A.D.3d 1035, 1036, 920 N.Y.S.2d 123, 125 (2011).

## III. Infringement and Conversion of SI-related Intellectual Property (Counts 9, 11-12, & 15)

May 31, 2024
Page 3

      Plaintiffs' claims against Mr. Bhargava for contributory copyright infringement (Count XII) and vicarious copyright infringement (Count XI) should be dismissed because they fail to give adequate notice of the direct copyright infringement claim on which they rest and because they do not recite matter sufficient to support the claim elements required. A claim for contributory copyright infringement must plead an underlying direct infringement, a defendant's material inducement of or contribution to the infringing activities, and knowledge of the infringing activities. Absent plaintiffs' notice of the specific works alleged to be infringed, plaintiffs cannot viably allege that Mr. Bhargava had knowledge of or materially assisted any infringing activity. Even if the works alleged to be infringed were particularly identified, however, the Complaint only offers conjecture and speculation that Mr. Bhargava materially contributed to the infringing activities and had knowledge of them. Not surprisingly, the Complaint offers not a single allegation of Mr. Bhargava's personal engagement with creative works content management, publication or use or decisions concerning them. The Complaint alleges, without explanation or support, only that "Bhargava has induced, caused, assisted, or materially contributed to the infringing conduct of Arena" (Complaint ¶ 204) and that Mr. Bhargava has provided the means for the infringing conduct of Arena (Complaint ¶ 205)". These are self-serving, conclusory statements intended to check boxes, but they are bereft of substance or merit.

      Moreover, the vicarious copyright infringement liability claim asserted against Mr. Bhargava must be dismissed because the Complaint's allegations, even if true, do not plausibly place him in control of Arena for any relevant times or attribute financial gain to him. Mr. Bhargava's status as interim CEO or an indirect investor does not establish or even allege that he engaged in conduct required to state a contributory copyright infringement claim.

      Plaintiffs' claim for conversion (Count IX, Complaint ¶¶ 180-186) seeking "damages to compensate for [defendants'] conversion of SI brand rights […]" (*id.* ¶ 186) must be dismissed because alleged trademark rights do not give rise to claims for conversion. "It is well settled . . . that there is no action for trademark conversion." *Lemonis v. A. Stein Meat Prods.,* 2015 U.S. Dist. Lexis 27776, at *12-13 (S.D.N.Y. March 6, 2015). "Because "[a] trademark […] is intangible intellectual property having no existence apart from the good will of the product or service it symbolizes," it cannot support a claim of conversion." *Grgurev v. Licul, 229 F Supp 3d 267, 286 (S.D.N.Y. 2017)*. Moreover, the conversion claim must be dismissed as preempted by the Copyright Act. *See id. Avalos v. IAC/Interactivecorp.*, 2014 U.S. Dist. LEXIS 153890, 2014 WL 5493242, at *20-21 (dismissing as preempted by the Copyright Act a conversion claim alleging unauthorized publication of photographs).

      Finally, Plaintiffs' claim for trademark infringement (Count XV, Complaint ¶¶ 227-231) against Mr. Bhargava must be dismissed. Plaintiffs pleaded only the threadbare accusation that Mr. Bhargava was the "moving, active, conscious forces behind Arena's infringing activity as they authorized and approved the underlying infringement." (Complaint ¶ 230.) Because the Complaint contains no allegations sufficient to support this implausible conclusion the claim must be dismissed, as well.

                                       Respectfully submitted,

                                         *S/Joseph E. Viviano*

                                         (admitted pro hac vice)
                                         Counsel for Defendant Manoj Bhargava

cc:      All counsel of record (via ECF)