# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL     rkaplan@kaplanhecker.com

June 21, 2024

**VIA ECF**

The Honorable John G. Koeltl
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 12007-1312

    Re:    *Authentic Brands Group, LLC, et al. v. The Arena Group Holdings, Inc., et al.*
            Case No. 24-cv-02432 (JGK) (GS)

Dear Judge Koeltl:

    On behalf of Plaintiffs Authentic Brands Group, LLC, ABG-SI, LLC, and ABG Intermediate Holdings 2 LLC (together, "ABG"), we write in response to Defendant Manoj Bhargava's letter dated May 31, 2024 requesting a pre-motion conference in connection with his anticipated motion to dismiss the claims against him, not the claims against Defendant The Arena Group Holdings, Inc. ("Arena"). ECF 21 ("Ltr.").[1] As discussed below, Bhargava's proposed partial motion to dismiss lacks merit since it ignores the detailed, well-pleaded allegations in the Complaint, ECF 1 ("Compl."), which demonstrate that Bhargava exercised dominion and control over his co-Defendant, Arena, in total disregard of corporate formalities and in order to benefit himself and his other businesses, including 5-hour ENERGY, Sports News Highlights, and Athlon Sports—a direct competitor to SI that Bhargava has subsequently tried to prop up as a replacement of SI through the infringement of SI's content and interference with its access to consumer data.

    Under black letter New York law, "determining whether to pierce the corporate veil is a very fact specific inquiry involving a multitude of facts," *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 64 (2d Cir. 2001), which is "unsuited for resolution on a pre-answer, pre-discovery motion to dismiss," *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y. 2018). Indeed, dismissal of the claims as they pertain only to Bhargava would be particularly inappropriate here, given that the parties will soon be engaging in discovery since Arena has already filed an answer and purported counterclaims. Thus, even if Bhargava decides

---

[1] We are also separately submitting to Your Honor our pre-motion letter regarding our anticipated motion to compel arbitration and/or dismiss Arena's purported counterclaims.

to file his partial motion to dismiss, discovery will proceed in any event. *See, e.g.*, *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72-73 (S.D.N.Y. 2013).[2]

## I. Breach of Contract (Counts 1-7)

In Counts 1 through 7, ABG alleges that Bhargava, as the controlling shareholder and (for a time) interim CEO of Arena, caused the Company to breach the parties' Licensing Agreement by failing to pay the Quarterly Payment, other commissions and royalties, and the Termination Payment, and taking various actions to damage the SI brand and interfere with its ownership rights in SI assets.[3] As Bhargava acknowledges, however, whether he can be held personally liable for these breaches turns on a variety of classically fact-intensive questions, including whether corporate formalities were followed, whether corporate assets were siphoned off, and whether Arena was adequately capitalized. Ltr. at 2. While Bhargava claims that ABG has not identified "*a single fact*" to support liability under this multi-factor test, *id.* (emphasis added), a review of the allegations demonstrates otherwise.

According to the Complaint, upon taking control of Arena in August 2023 (and before he had any formal position), Bhargava "developed a plan to sideline [Ross] Levinsohn (then [Arena's] CEO), cause Arena to breach its Licensing Agreement with ABG, and fire Arena's SI unionized staff," using the manufactured termination of the Licensing Agreement by ABG as grounds for Arena to terminate its union contract. Compl. ¶¶ 52, 56. In threatening to withhold the Quarterly Payment, Bhargava claimed that Arena was "insolvent" and did not have enough money to pay both ABG and its employees. *Id.* ¶ 56. In furtherance of this scheme, and in complete disregard of corporate formalities, Bhargava replaced two Arena Board members with his own hand-picked long-time associates, directed the head of Human Resources to fire Levinsohn and two other executives (and then had the Board retroactively authorize those improper actions), installed himself as interim CEO, and told ABG that he would single-handedly cause Arena to breach the Licensing Agreement (in furtherance of his personal anti-union plans). *Id.* ¶¶ 53-56, 58. Bhargava also immediately caused Arena to exploit SI for the benefit of his other businesses, including by advertising his 5-hour ENERGY product on SI's websites and in the SI magazine, posting his Sports News Highlights video player (with a permanent 5-hour ENERGY logo) on SI's websites, and trying to compel SI Swimsuit models to sell his other companies' products. *Id.* ¶¶ 51, 60, 80. Moreover, when Bhargava's efforts to force ABG to renegotiate the Licensing Agreement failed, he went "nuclear," as he had explicitly threatened to do, directing Arena to try to shut down the SI website, interfere with ABG's ability to obtain SI IP and consumer data, and steal ABG's property to prop up his competitor brand, Athlon Sports. *Id.* ¶¶ 84-87, 90-102.

These facts (among others) clearly evidence the kind of contempt for corporate formalities, siphoning off of assets, and undercapitalization that can establish personal liability for someone like Bhargava. *See, e.g.*, *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2013 WL 1274561, at *9 (S.D.N.Y. Mar. 29, 2013), *aff'd sub nom. NYKCool A.B. v. Ecuadorian Line, Inc.*, 562 F. App'x 45 (2d Cir. 2014); *Cary Oil Co. v. MG Refin. & Mktg., Inc.*, 90 F. Supp. 2d 401, 414-15 (S.D.N.Y

---

[2] Indeed, this case presents the perfect example of a situation where a motion for partial summary judgment will assist in achieving a final resolution of ABG's contract claim as to Arena since the terms of the sophisticated commercial parties' contract could hardly be clearer that Arena is obligated to pay ABG $48.75 million for the Termination Payment and missed Quarterly Payment (among other amounts).

[3] All terms not defined herein have the meaning given to them in the Complaint.

2000). And contrary to Bhargava's contentions, Ltr. at 2, they show that he not only abused Arena's corporate structure in order to breach the Licensing Agreement, but also to perpetrate an "injustice," including his apparent violation of labor laws, his interference with ABG's contract with Minute Media, and his wholesale theft of ABG's property rights. Ltr. at 2. *See also Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 2019 WL 1447615, at *5 (S.D.N.Y. Mar. 15, 2019) ("The veil piercing standard is broadly worded and grants substantial equitable discretion to the court." (citation omitted)). While we understand why Bhargava would like to pretend these allegations did not exist, the question of whether the corporate veil should be pierced requires *factual* resolution. *See, e.g.*, *Paguirigan v. Prompt Nursing Employment Agency LLC*, 286 F. Supp. 3d 430, 441 (E.D.N.Y. 2017) ("[V]eil-piercing is not well-suited even for summary judgment resolution." (citation and quotation marks omitted)).

## II.     Non-Contract Claims (Counts 8-9, 11-12, 15)

Bhargava also argues that ABG's claim that Arena (and he) tortiously interfered with ABG's contract with Minute Media fails because ABG does not allege Minute Media breached its agreement with ABG. Ltr. at 2. The Complaint is clear, however, that Arena and Bhargava not only failed to "arrange for the orderly transition of the Digital Channels to" ABG and Minute Media and the delivery of SI-related content and Consumer Data, but also and moved to shut down the Digital Channels, leading Minute Media to scramble to mitigate by Arena and Bhargava by setting up static, non-dynamic websites that could not perform the basic function of displaying advertising necessary for revenue. Compl. ¶¶ 86-87. *See id.*; Ex. A § 3(b)(iii) (providing licensee must maintain Digital Channels "with respect to functionality").

Bhargava next claims he cannot be liable for copyright infringement because the Complaint does not allege underlying infringement, his material inducement or contribution and knowledge, and his "control" of Arena at the relevant times. Ltr. at 3. But the Complaint asserts that he threatened Arena would "go nuclear" if ABG refused his demands in March 2024, and then proceeded to direct Arena to do just that when ABG refused, including by interfering with and stealing ABG's IP and SI-related content. Compl. ¶¶ 82-87, 90-102. Such allegations clearly suffice under well-settled law. *See, e.g.*, *MerchDirect LLC v. Cloud Warmer, Inc.*, 2019 WL 4918044, at *2, 5 (E.D.N.Y. Sept. 30, 2019). Finally, contrary to Bhargava's contentions, Ltr. at 3, a conversion claim can lie for ABG's IP-protected assets because Bhargava and Arena interfered with ABG's exclusive use rights. *See, e.g.*, *Rennie v. Top View / Go N.Y. Tours / S.E. Pers.*, 2023 WL 2955306, at *3 (S.D.N.Y. Apr. 14, 2023). Moreover, Bhargava and Arena also interfered with ABG's rights to consumer data, Compl. ¶¶ 182-86, which extends beyond IP and is protected. *See, e.g.*, *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 284 (S.D.N.Y. 2016) (Koeltl, J.).

*     *     *     *     *

For these reasons, among others, Bhargava's proposed partial motion to dismiss is unfounded and premature. At this juncture, the parties should engage in discovery on ABG's claims against Arena and Bhargava. If, upon completion of discovery, Bhargava still believes he can show that he properly observed corporate formalities and did not exercise domination and control over Arena, then he could file a motion for partial summary judgment. Finally, given Arena's filing of its Answer and Third-Party Complaint, ECF 25, we respectfully request that the Court set a uniform briefing schedule for all motions that will go forward.

KAPLAN HECKER & FINK LLP

4

Respectfully submitted,

Roberta A. Kaplan