

July 5, 2024

**VIA ECF**
Hon. John G. Koeltl, U.S. District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re: *Authentic Brands Group, LLC, et al. v. The Arena Group Holdings, Inc. et al.*
          Case No. 24-02432 (JGK)

Your Honor:

      We represent The Arena Group Holdings, Inc. ("Arena")[1] in the above-referenced matter. We submit this response to the June 21, 2024 pre-motion letter (ECF 30) filed by Plaintiffs-Counterclaim Defendants Authentic Brands Group, LLC, ABG-SI LLC and ABG Intermediate Holdings 2 LLC (together, "ABG"). ABG's requested motion to dismiss should be denied.

      **I.**      **ABG does not own Arena's websites or proprietary technology.**

      ABG cannot point to any provision of the License Agreement establishing its alleged ownership of Arena's websites or right to continue to use Arena's proprietary technology. The plain text of Sections 2(a), 2(d), 3(b)(iii), 5(a)(i)-(iii) and 10(g) do not support ABG's interpretations. Section 2(a) grants Arena a license to operate and post content to Digital Channels, which are defined as websites, mobile applications or new distribution channels "operated by [Arena] and branded with the SI Trademarks[.]" § 1(n)(i)-(iii). Section 3(b)(iii) gives ABG certain oversight privileges with respect to the Digital Channels. These provisions merely delineate those portions of Arena's websites over which ABG would have certain oversight privileges during the term of the License Agreement (*i.e.*, the pages on which the SI Trademarks were displayed). These terms do not, contrary to ABG's extreme and commercially nonsensical interpretation, award ABG *ownership* of entire components of Arena's proprietary platform.

      ABG's reliance on Sections 5(a)(i)-(iii) fares no better. Section 5(a)(i) delineates certain of the parties' rights as to SI Content, Licensor Created Content, and the SI Trademarks, and none of Section 5's other provisions award ABG ownership over Arena's source code or its website pages hosting the content and SI Trademarks, nor would they: such are proprietary materials created by Arena as part of its general business platform. It would make no commercial sense (and is certainly not what the License Agreements states) for ABG to become the owner of any Arena-created

---

[1] All terms not defined herein have the meaning given to them in Arena's Counterclaims, Third-Party Claims and Answer (the "Arena Counterclaims").

website (or underlying code) simply because SI content or an SI trademark once appeared on it.[2] To be sure, the parties agree that Licensee Created Content excludes Arena's website improvements and code and programming changes. *See* ABG's June 21, 2024 letter to the Court (ECF 30) at 2.

The cases cited by ABG, most of which were not decided on motions to dismiss, are factually inapposite. In *Holtzbrinck Pub. Holdings, L.P. v. Vyne Commc'ns, Inc.*, 2000 WL 502860 (S.D.N.Y. Apr. 26, 2000), the Court's summary judgment ruling highlighted that the infringing party had hired the other party for the specific purpose of building a website. *Id*. *4-6. Likewise, in *Startable, Inc. v. Waft Perfume, Inc.,* 2023 WL 2463870 (S.D.N.Y. Feb. 21, 2023), "[t]he parties entered into an agreement…to develop certain improvements to Defendant's website" and "[t]he work by Plaintiff was performed pursuant to contract, not a license." *Id*. at *1-2. *Alcatel USA, Inc. v. Cisco Sys.*, *Inc*., 239 F. Supp. 2d 645, 659 (E.D. Tex. 2002), yet another summary judgment decision, supports Arena's position, not ABG's. *Id.* (party was exclusive owner of the programs it created where there was no writing assigning ownership and the programs were not works for hire). The remaining cases cited by ABG are similarly distinguishable. *See Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d (2d Cir. 2019) (agreement "permitted defendants to reproduce and use the station and server source code"); *Stanacard, LLC v. Rubard, LLC*, 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) (summary judgment decision relating to a work-for-hire clause in the parties' agreement); *Linkov v. Golding*, 2013 WL 5922974 (E.D.N.Y. Oct. 31, 2013) (defendant met low threshold of presenting plausible work-for-hire defense to avoid default judgment); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) (work-for-hire clause present in parties' agreement).

Moreover, whether a work of authorship is a "joint work" (*see* 17 U.S.C. § 101) inherently is a question of fact. Regardless of its label, a work only qualifies as a "work-for-hire" if it falls within nine statutorily defined types. *Id*. Arena's proprietary technology elements do not, and ABG does not argue otherwise. Instead, it claims that Arena improved its own website at ABG's request and in exchange for payment. Both claims are untrue, and neither is dispositive of ownership. ABG also argues that it holds irrevocable rights to use Arena-owned elements, but no provision in the License Agreement states such – a glaring omission. In any event, each of the bases on which ABG claims to own Arena's proprietary technology is fact-dependent and inappropriate to resolve at the pleading stage.

## II. Arena has sufficiently alleged the elements of each of its claims.

Arena has sufficiently alleged each of its counterclaims.[3] First, "New York's law of unfair competition is a broad and flexible doctrine," whose essence is "that the defendant misappropriated

---

[2] Bizarrely, ABG also trumpets Section 2(d), a general reservation of rights clause, which cannot possibly be read as a forfeiture of Arena's proprietary business platform.

[3] ABG also argues that certain of Arena's claims must be arbitrated. But the cited arbitration clause (https://thearenagroup.net/terms-of-use at Section 16) specifically *excludes* arbitration claims for "equitable relief for the alleged infringement or misappropriation of intellectual property." This is the core of Arena's claims here: Arena seeks *equitable* and monetary relief arising from the misappropriation of its intellectual property.

the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea [] through... an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001). This is well-pleaded here: ABG and Minute obtained misappropriated proprietary business information by inducing Former Arena Employees to breach their obligations to Arena (¶¶ 134-139).[4] And, contrary to ABG's mischaracterizations, Arena's aiding and abetting breach of fiduciary duty claim is premised on allegations that ABG enticed an Arena SVP to provide the zone files with prospects that she would be hired by Minute. (¶¶ 75-76). *See Aon Risk Servs. v. Cusack*, 946 N.Y.S.2d 65 at *13 (Sup. Ct. N.Y. Co. Dec. 20, 2011).

As to Arena's statutory unfair competition claim, its confidential CMS, code, and encapsulation of raw content (¶¶ 113-114) are protectable trade dress, which ABG and Minute reproduced as their own. *See Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240–41 (C.D. Cal. 2014) ("look and feel" of website design sufficient for Lanham Act claim). Arena's misappropriation claim is premised on the theft of Arena's code and confidential Publishers List (¶¶124; 144-145), which are protectable trade secrets. *See e.g. Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 195 (E.D.N.Y. 2017); *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 802 (2d Cir.), *cert. denied*, 144 S. Ct. 352, 217 L. Ed. 2d 188 (2023).

Meanwhile, New York has long recognized tortious interference of at-will contracts where the termination was procured through improper means. *See Cohen v. Davis*, 926 F. Supp. 399, 403 (S.D.N.Y. 1996) (collecting cases). To that end, allegations that the Former Arena Employees violated contractual and fiduciary obligations to facilitate the widespread termination of Partner Agreements (¶¶ 211-214) are well recognized as "improper" means. *See, e.g., Poller v. BioScrip, Inc.,* 974 F. Supp. 2d 204, 237 (S.D.N.Y. 2013). Further, the alleged interference with computer systems and servers (¶¶ 190-191) is sufficient to state a claim for trespass to chattels. *See Register.com Inc v. Verio*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000). Finally, dismissal of the unjust enrichment claim at this early stage would be premature. *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); Fed. R. Civ. P. 8(d)(2).

\*\*\*

In ABG's own words (ECF 29), "[a]t this juncture, the parties should engage in discovery" and if after discovery ABG still believes that it owns the property at the heart of Arena's claims, it can file a motion for summary judgment.

Respectfully submitted,

*/s/ Yonaton Aronoff*

Yonaton Aronoff

---

[4] Citations to paragraphs are those contained in Arena's Counterclaims (ECF 25).