**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUTHENTIC BRANDS GROUP, LLC, ABG-SI LLC, and ABG INTERMMEDIATE HOLDINGS 2 LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>THE ARENA GROUP HOLDINGS, INC. and MANOJ BHARGAVA,<br><br>     Defendants.<br><br>―――――――――――――――――<br><br>THE ARENA GROUP HOLDINGS, INC.,<br><br>     Counter & Third-Party Plaintiffs,<br><br>v.<br><br>AUTHENTIC BRANDS GROUP, LLC, ABG-SI LLC, and ABG INTERMEDIATE HOLDINGS 2 LLC,<br><br>     Counter Defendants.<br><br>and<br><br>SPORTORITY INC., d/b/a MINUTE MEDIA,<br><br>     Third-Party Defendant. | Case No. 24-cv-02432 (JGK) (GS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT MANOJ BHARGAVA'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ..............................................................................................3

    I.    ABG and Arena enter into the Licensing Agreement. ..........................................3

    II.   During an attempted business combination with Bridge Media Networks, LLC, Arena allegedly fails to make a quarterly royalty payment...........................................4

    III.  ABG executes a new licensing agreement with Minute Media, and the parties negotiate a transition plan...........................................................................................5

    IV.  ABG accuses Arena of misusing its intellectual property....................................5

    V.   Plaintiffs file suit against Arena and name Bhargava as a defendant. .................6

ARGUMENT .......................................................................................................................7

    I.    Standard of Review. ..............................................................................................7

    II.   The Court should dismiss the breach of contract claims against Bhargava (Counts I-VII) because he was not a party to the Licensing Agreement. ....................................8

    III.  ABG's "Piercing the Corporate Veil/Alter Ego Liability" claim (Count VIII) fails because that is not an independent cause of action. ........................................17

    IV.  ABG fails to state a claim for tortious interference against Bhargava (Count IX)...........18

    V.   ABG's claim for conversion (Count X) must be dismissed..............................20

    VI.  Because ABG's direct copyright infringement claim is pleaded insufficiently, the secondary copyright infringement claims against Bhargava (Counts XII-XIII) must be dismissed.....................................................................................................22

    VII. Plaintiffs' claim for trademark infringement (Count XVI) must be dismissed.................25

CONCLUSION...................................................................................................................26

# TABLE OF AUTHORITIES

## **Cases**

*Advanced Knowledge Tech., LLC v. Fleitas,*
    2021 WL 6126966 (S.D.N.Y. Dec. 28, 2021) ........................................................ 20

*Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.,*
    164 F.Supp.3d 104 (D.D.C. 2016) ........................................................................ 19

*Archie Comic Pubs., Inc. v. DeCarlo,*
    141 F. Supp. 2d 428 (S.D.N.Y. 2001) .................................................................. 22

*Arista Records LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) .................................................................................. 8

*Arista Records LLC v. Lime Grp. LLC,*
    784 F. Supp. 2d 398 (S.D.N.Y. 2011) .................................................................. 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................... 7, 8

*Avalos v. IAC/Interactivecorp.,*
    2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) .................................................. 21, 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... 7, 8

*Blair v. Infineon Techs. AG,*
    720 F. Supp. 2d 462 (D. Del. 2010) .................................................................... 18

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004) ............................................................................... 21

*Burrowes v. Combs,*
    808 N.Y.S.2d 50 (2006) ..................................................................................... 19

*Carruthers v. Flaum,*
    365 F. Supp. 2d 448 (S.D.N.Y. 2005) .................................................................. 17

*Chiomenti Studio Legale v. Prodos Capital Mgmt. LLC,*
    140 A.D.3d 635 (N.Y. App. Div. 2016) ................................................................ 18

*Chloe v. Queen Bee of Beverly Hills, LLC,*
    2011 WL 3678802 (S.D.N.Y. Aug. 19, 2011) ...................................................... 26

*Cole v. Allen,*
    3 F.R.D. 236 (S.D.N.Y. 1942) ............................................................................... 23

*Cole v. John Wiley & Sons, Inc.,*
    2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)........................................................... 23

*Compagnie des Grands Hotels d'Afrique S.S. v. Starman Hotel Holdings LLC,*
    2023 WL 5095274 (D. Del. Aug. 8, 2023)................................................. 9, 10, 12, 15

*Contractual Obligations Prods. LLC v. AMC Networks, Inc.,*
    2007 WL 9683718 (S.D.N.Y. Mar. 30, 2007) ....................................................... 15

*Crabtree v. Tristar Auto. Group, Inc.,*
    776 F. Supp. 155 (S.D.N.Y. 1991) .......................................................................... 8

*D'Andrea v. Rafla-Demetrious,*
    146 F.3d 63 (2d Cir. 1998) .................................................................................... 19

*DiMaggio v. Int'l Sports Ltd.,*
    1998 WL 549690 (S.D.N.Y. Aug. 31, 1998) .......................................................... 23

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2d Cir. 1987) .................................................................................. 8

*Doberstein v. G-P Indus., Inc.,*
    2015 WL 6606484 (Del. Ch. Oct. 30, 2015).......................................................... 11

*Eu Yan Sang Int'l Ltd. v. S & M Enters. (U.S.A.) Enter. Corp.,*
    2010 WL 3824129 (E.D.N.Y. Sept. 8, 2010) ......................................................... 26

*Flaherty v. Filardi,*
    2007 WL 2734633 (S.D.N.Y. Sept. 19, 2007) ....................................................... 22

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC,*
    586 U.S. 296 (2019)................................................................................................ 23

*Grgurev v. Licul,*
    229 F. Supp 3d 267 (S.D.N.Y. 2017) ..................................................................... 21

*Herrick Co., Inc. v. Vetta Sports, Inc.,*
    1996 WL 434571 (S.D.N.Y. Aug. 2, 1996)............................................................ 19

*In re Alper Holdings USA, Inc.,*
    398 B.R. 736 (Bankr. S.D.N.Y. 2008)...................................................................... 9

*In re Foxmeyer Corp.*,
   290 B.R. 229 (Bankr. D. Del. 2003) ......................................................9, 11

*In re Magna Entm't Corp.*,
   442 B.R. 88 (Bankr. D. Del. 2011) .............................................................11

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
   176 F. Supp. 3d 137 (E.D.N.Y. 2016) ................................................. 25, 26

*J & J Sports Prods., Inc. v. Abdelraouf*,
   2018 WL 7916309 (E.D.N.Y. Nov. 21, 2018)...........................................25

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
   8 F.3d 130 (2d Cir. 1993) ............................................................................ 9

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ................................................................. 23

*Kimso Apartments, LLC v. Rivera*,
   119 N.Y.S.3d 519 (N.Y. App. Div. 2020) ................................................. 20

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ................................................................. 18, 19

*Klauber Bros., Inc. v. M.J.C.L.K., LLC*,
   2022 WL 5108902 (S.D.N.Y. Oct. 4, 2022)............................................. 24

*Klauber Bros., Inc. v. URBN US Retail LLC*,
   2022 WL 1539905 (S.D.N.Y. May 14, 2022) ........................................... 25

*Kuklachev v. Gelfman*,
   2009 WL 804095 (E.D.N.Y. Mar. 25, 2009)............................................ 26

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d 413 (N.Y. 1996) ...................................................................... 18

*Lane Coder Photography, LLC v. Hearst Corp.*,
   2023 WL 5836216 (S.D.N.Y. Sept. 8, 2023) ...................................... 22, 24

*Lefkowitz v. John Wiley & Sons, Inc.*,
   2014 WL 2619815 (S.D.N.Y. June 2, 2014) ............................................ 22

*Lemonis v. A. Stein Meat Prods.*,
   2015 WL 997987 (S.D.N.Y. March 6, 2015) ............................................ 21

*Liang v. USA QR Culture Indus. Dev. LLC*,
  2023 WL 8252962 (S.D.N.Y. Nov. 29, 2023)......................................................... 8

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014) ............................................................................. 7

*Marnavi S.P.A. v. Keehan*,
  900 F. Supp. 2d 377 (D. Del. 2012) .................................................................. 10

*Marzullo v. Beekman Campanile, Inc.*,
  2011 WL 3251507 (S.D.N.Y. July 22, 2011) ....................................................... 19

*Matana v. Merkin*,
  957 F. Supp. 2d 473 (S.D.N.Y 2013) .................................................................. 8

*Medi-Tec of Egypt Corp. v Bausch & Lomb Surgical*,
  2004 WL 415251 (Del. Ch. Mar. 4, 2004) .......................................................... 10

*MicroStrategy Inc. v. Acacia Research Corp.*,
  2010 WL 5550455 (Del. Ch. Dec. 30, 2010) .....................................................9, 11

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
  326 F. Supp. 3d 26 (S.D.N.Y. 2018) ..................................................................11

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) ...............................................................9, 10, 11

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*,
  664 N.E.2d 492 (N.Y. 1996) ............................................................................. 19

*Ortega v. Burgos*,
  2014 WL 2124957 (E.D.N.Y. May 22, 2014) ....................................................... 21

*Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*,
  685 A.2d 724 (Del. Super. Ct. July 10, 1996).....................................................11, 12

*Plunket v. Estate of Conan Doyle*,
  2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ........................................................ 23

*PR Acquisitions, LLC v. Midland Funding LLC*,
  2018 WL 2041521 (Del. Ch. Apr. 30, 2018)........................................................ 12

*RBATHTDSR, LLC v. Project 64 LLC*,
  2020 WL 2748027 (D. Del. May 27, 2020) ......................................................... 18

*Snowbridge Advisors LLC v. ESO Capital Partners UK LLP*,
    589 F. Supp. 3d 401 (S.D.N.Y. 2022) ........................................................ 20

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
    118 F.3d 955 (2d Cir. 1997) ..................................................................... 25

*Sparig v. Danenberg*,
    2013 WL 12358424 (E.D.N.Y. Aug. 9, 2013) ............................................ 20

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d. Cir. 2018) ................................................................... 22

*TileBar v. Glazzio Tiles*,
    2024 WL 1186567 (E.D.N.Y. Mar. 15, 2024) ............................................ 19

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ........................................... 12, 15, 16, 17

*Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*,
    721 F. Supp. 2d 194 (S.D.N.Y. 2010) ...................................................... 15

*U2 Home Entm't, Inc. v. Kylin TV, Inc.*,
    2007 WL 2028108 (E.D.N.Y. July 11, 2007) ............................................ 23

*Wallace v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999) ........................................................ 12, 15

*Wang v. New York-New Jersey Section of the Ninety-Nines, Inc.*,
    2018 WL 3432744 (S.D.N.Y. June 4, 2018) ............................................. 18

*Wenske v. Blue Bell Creameries, Inc.*,
    2018 WL 3337531 (Del. Ch. July 6, 2018) .......................................... 9, 11, 15

*Westbury Recycling, Inc. v. Westbury Transfer & Recycling, LLC*,
    177 N.Y.S.3d 101 (N.Y. App. Div. 2022) ................................................. 20

*Williams v. D'Youville Coll.*,
    2022 WL 18484425 (W.D.N.Y. Sept. 29, 2022) ........................................ 23

## **Statutes**

17 U.S.C. § 101 ............................................................................................ 21

17 U.S.C. § 102 ............................................................................................ 21

17 U.S.C. § 103 ............................................................................................ 21

17 U.S.C. § 106 .................................................................................................................... 22

17 U.S.C. § 411 .................................................................................................................... 23

**Rules**

Fed. R. Civ. P. 9 ..................................................................................................................... 8

Fed. R. Civ. P. 12 ................................................................................................................... 7

**Treatises**

1 Fletcher Cyc. Corp. § 43 ....................................................................................................11

## INTRODUCTION

In this business-to-business dispute, Plaintiffs Authentic Brands Group, LLC, ABG-SI LLC ("ABG"), and ABG Intermediate Holdings 2 LLC (collectively, "Plaintiffs") have brought breach of contract, tortious interference, conversion, and various intellectual property claims against The Arena Group Holdings, Inc. At its core, this case is about a 2019 Licensing Agreement between ABG and Arena (the "Licensing Agreement"). But ABG also seeks to hold Arena's majority shareholder and President, Manoj Bhargava, **individually liable** under an ill-advised and legally deficient veil piercing/alter ego theory of liability. Courts have consistently rejected and dismissed such claims where, as here, ABG (1) did not allege that Bhargava used Arena's corporate form as a sham or in a fraudulent manner and (2) instead seeks to pierce the corporate veil based on Arena's alleged underlying breaches of contract.

The Court should reject this flawed veil piercing theory and promptly dismiss Plaintiffs' claims against Bhargava individually. To do otherwise would drag the relatively straightforward business disputes in this case – such as whether Arena breached the Licensing Agreement by failing to make required payments to ABG – down a rabbit hole and unjustly force Bhargava to live under the specter of individual liability, however frivolous, while this case is litigated.

In Counts I-VII of the Amended Complaint (Breaches of Contract), ABG seeks to hold Bhargava liable for various alleged breaches of the Licensing Agreement and more than $50 million in damages. But Bhargava is not a party to the Licensing Agreement, which ABG and Arena entered into **four years before Bhargava held an interest in or had any connection to Arena**, and it is axiomatic that he cannot be personally liable for the alleged breach of a contract to which he is not a party.

ABG attempts to sidestep this fundamental rule of contract law and disregard Arena's legal existence with cursory veil piercing allegations that do not pass the smell test, much less state a

claim under Fed. R. Civ. P. 12(b)(6). ABG has not remotely pled the kind of abuse of the corporate form required to pierce the corporate veil. Even if it had, ABG also failed to allege, as it must, that Bhargava abused Arena's corporate form to effectuate a wrongful action against ABG that was "fraud or something like fraud." **Significantly, the alleged wrongful action cannot be the underlying breach of contract**—yet that is precisely what ABG alleges. (*See* Am. Compl. at ¶¶ 116, 124, 133, 141, 149, 160, 170 (alleging that Bhargava "wrongfully used his domination of Arena **to cause it to breach the Licensing Agreement**").)

ABG's Count VIII (Veil Piercing/Alter Ego) fails to state a claim because New York law does not recognize this as a separate cause of action. And even if it did, ABG has failed to plead any facts that would justify disregarding Arena's legal existence and imposing individual liability on Bhargava.

ABG's Count IX (Tortious Interference) fails to state a claim because ABG (1) has not alleged a breach of ABG's separate 2024 contract with Minute Media, which is an absolute predicate to such a claim; (2) has not alleged that Bhargava's actions were the "but for" cause of that breach; and (3) has not pled facts sufficient to pierce Arena's corporate veil, as required to hold Bhargava personally liable.

ABG's Count X (Conversion) fails to state a claim because ABG does not allege that Bhargava converted any tangible property. Further, to the extent the claim is based on ABG's trademarks, New York law does not recognize a cause of action for conversion of a trademark. And to the extent the claim is based on ABG's copyrights, the claim is preempted by the Copyright Act.

ABG's Counts XII and XIII (contributory and vicarious copyright infringement) fail to state a claim because ABG has not adequately pled them or the direct infringement claim on which they depend.

Lastly, Plaintiffs' Count XVI (trademark infringement) fails to state a claim because they have not adequately pleaded that Bhargava is the moving, active, conscious force driving such alleged infringement.

At bottom, ABG's veil piercing theories are a transparent and improper attempt to create leverage against Bhargava personally in a conventional business-to-business dispute. The Court should reject that tactic and dismiss Plaintiffs' facially defective claims against Bhargava as an individual.

## FACTUAL BACKGROUND

### I.    ABG and Arena enter into the Licensing Agreement.

On June 14, 2019, ABG and Arena entered into a Licensing Agreement for the use of certain intellectual property related to the Sports Illustrated ("SI") brand. (Am. Compl. ¶ 34, ECF No. 47.)[1]

Under the Licensing Agreement, ABG gave Arena a license to use and earn revenue from SI-related intellectual property and content. Arena received the right to (1) use certain trademarks and domain names associated with the SI brand and (2) earn revenue on certain SI-related editorial and media content. Arena was also permitted to earn revenue from advertising and marketing in SI publications and digital channels and to license SI content to third-party websites, mobile

---

[1] Bhargava accepts the factual allegations in the Complaint as true only for the purposes of this Motion.

applications, and other digital channels. (*Id*. ¶¶ 34, 35 (citing Licensing Agreement §§ 2(a), 3(b)(i), 4(a)).)

In exchange, Arena agreed to manage the SI portfolio of businesses and to pay ABG, among other things, a quarterly royalty payment of $3.75 million. (*Id*. ¶¶ 36-37 (citing Licensing Agreement §§ 7(a)(i), 7(c)).)

The Licensing Agreement's "Initial Term" was to run until December 31, 2029. (*Id.* ¶ 34.) But ABG could terminate the Licensing Agreement sooner if Arena failed to make a timely royalty payment and did not cure the default within 10 business days. (*Id*. ¶ 42 (citing Licensing Agreement § 10 (b)(i)).) If ABG terminated the agreement early, Arena was purportedly obligated to (1) "immediately cease and make no use of" SI's brand rights (*id.* ¶ 43 (citing Licensing Agreement § 4(d))) and (2) make a Termination Payment to ABG that, at a minimum, would equal $45 million (*id.* ¶ 44 (citing Licensing Agreement § 10(g)(ii))).

## II.    During an attempted business combination with Bridge Media Networks, LLC, Arena allegedly fails to make a quarterly royalty payment.

On August 14, 2023, Arena announced that it had agreed to terms regarding the sale of most of its ownership shares to Bridge Media Networks, LLC, a media company owned by Manoj Bhargava. (Am. Compl. ¶¶ 25, 50.) But that deal is not final (*Id*. ¶ 50.) Several months later, in November 2023, Bhargava acquired a minority stake in Arena by purchasing equity and debt from Arena's largest shareholder at the time. (*Id.* ¶ 11.) On December 11, 2023, Bhargava replaced Ross Levinsohn as CEO of Arena. (*Id*. ¶ 55.)

Over the next several weeks, Arena and ABG began discussions about renegotiating the terms of the Licensing Agreement. (*Id.* ¶¶ 56-58.) Plaintiffs allege that Bhargava led the negotiations for Arena and threatened to withhold the upcoming quarterly royalty payment and to lay off Arena's unionized SI staff if ABG terminated the Licensing Agreement early. (*Id.* ¶ 56.)

On January 2, 2024, Arena failed to make the $3.75 million quarterly royalty payment to ABG under the Licensing Agreement and did not cure the default within 10 business days. (*Id.* ¶¶ 61-67.) On January 18, 2024, ABG sent Arena a Notice of Termination, asserting that Arena's rights under the Licensing Agreement were terminated and the $45 million Termination Payment was due immediately. (*See* Ex. 5 to Am. Compl.)

### III.    ABG executes a new licensing agreement with Minute Media, and the parties negotiate a transition plan.

Two months later, on March 18, 2024, ABG announced that it had entered into a new licensing agreement with Minute Media. (Am. Compl. ¶ 82.) Minute Media executives met with Bhargava and other Arena executives to discuss the transition of the SI business from Arena to Minute Media. (*Id.* ¶ 83.) According to the Amended Complaint, Minute Media requested Arena's support for a smooth transition, and in return offered Arena various contractual benefits with a commercial value of approximately $6 million. (*Id.*) Bhargava allegedly countered with a $50 million demand and threatened SI's business, including the deletion of content archives, if his demand was not met. (*Id.* ¶¶ 84-85.) Later, Arena allegedly shut down the hosted "dynamic" versions of SI websites, including si.com, and ordered Arena employees to instruct third-party vendors to withhold or destroy ABG's intellectual property and consumer data. (*Id.* ¶ 87.)

### IV.    ABG accuses Arena of misusing its intellectual property.

The Amended Complaint further alleges that Bhargava and Arena unlawfully used SI's intellectual property. (Am. Compl. ¶ 90.) For example, Arena allegedly interfered with ABG's ownership rights to "FanNation" – a network of over 150 sports publishers and writers – by executing separate licensing agreements with FanNation publishers that ABG did not have an opportunity to review or approve. (*Id.* ¶¶ 103-105.) Plaintiffs also accuse Arena of applying to register the FanNation trademark even though ABG purportedly owns the mark. (*Id.* ¶¶ 105-107.)

**V.        Plaintiffs file suit against Arena and name Bhargava as a defendant.**

On April 1, 2024, Plaintiffs filed their Complaint against Arena and Bhargava. (*See* Compl., ECF No. 1.) After Bhargava challenged the sufficiency of ABG's veil piercing allegations, Plaintiffs filed an Amended Complaint on August 1, 2024. (*See* Am. Compl., ECF No. 47.)

The first seven Counts of the Amended Complaint assert breach of contract claims based on (1) Arena's failure to make payments allegedly due under the Licensing Agreement and (2) Arena's alleged violations of various covenants and interference with ABG's ownership rights of the SI brand. (*Id.* ¶¶ 111-172.) ABG alleges that Bhargava is individually liable for each of these claims because he "wrongfully used his domination of Arena **to cause it to breach the Licensing Agreement**[.]" (*Id.* ¶¶ 116, 124, 133, 141, 149, 160, 170.)

In addition, ABG added a new count to the Amended Complaint, Count VIII, which it entitled "Piercing the Corporate Veil/Alter Ego Liability By Plaintiff ABG-SI Against Defendant Bhargava." (*Id.* ¶¶ 173-182.) In that Count, ABG alleges that Bhargava exercised control over Arena by (1) directing the head of Human Resources to terminate certain Arena executives before installing himself as interim CEO (*id.* ¶ 176); (2) causing Arena to fail to make the $3.75 million quarterly royalty payment due on January 2, 2024, as well as other payments, in furtherance of his efforts to create a pretext for terminating Arena's unionized employees (*id.* ¶ 177); and (3) causing Arena to fail to make the $45 million Termination Payment in an attempt to force ABG to renegotiate the Licensing Agreement (*id.*).

In support of its veil piercing claim, ABG further alleges that Bhargava represented that Arena was unable to pay amounts due to ABG because it was undercapitalized. (*Id.* ¶ 178.) ABG goes on to claim that, after gaining majority shareholder status of Arena in February 2024, Bhargava caused Arena to fail to comply with its obligations under the Licensing Agreement

concerning the transfer of the SI licensed business, demanded a $50 million payment, and threatened to cause Arena to "go nuclear" by trying to torpedo the SI business and websites. (*Id.* ¶ 179.) ABG alleges **on information and belief** that Bhargava took these steps as part of his ongoing efforts to force ABG to rewrite the terms of the Licensing Agreement to his personal benefit. (*Id.*)

Count IX of the Amended Complaint alleges that Bhargava tortiously interfered with the agreement between ABG and Minute Media. (*Id.* ¶¶ 183-189.)

Count X alleges that Arena and Bhargava converted ABG's intellectual property rights (*id.* ¶¶ 190-196), while Counts XII and XIII allege vicarious copyright infringement and contributory copyright infringement against Bhargava (*id.* ¶¶ 205-220.)

Finally, Count XVI alleges that Bhargava infringed on Plaintiffs' trademarks. (*Id.* ¶¶ 237-241.)

Bhargava now moves to dismiss each of these claims under Fed. R. Civ. P. 12(b)(6) because they fail to state a claim as a matter of law.

## ARGUMENT

### I.    Standard of Review.

This Court recently summarized the legal standard for a motion to dismiss as follows:

> To survive a Rule 12(b)(6) motion, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the factual content pleaded allows a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). 'Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'' *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

> In considering a motion to dismiss for failure to state a cause of action, a district court 'accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor.' *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks and citation omitted). This tenet, however, is 'inapplicable to legal conclusions.

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level, ... *i.e.*, enough to make the claim plausible.' *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted). A complaint is properly dismissed where, as a matter of law, 'the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief.' *Twombly*, 550 U.S. at 558, 127 S.Ct. 1955.

*Liang v. USA QR Culture Indus. Dev. LLC*, 2023 WL 8252962, at *3 (S.D.N.Y. Nov. 29, 2023).

In addition, fraud claims must satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b). *Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013). Plaintiffs must plead facts that give rise to a strong inference of fraudulent intent and allegations of fraud cannot be based on "information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

## II.    The Court should dismiss the breach of contract claims against Bhargava (Counts I-VII) because he was not a party to the Licensing Agreement.

Counts I-VII allege various breaches of the Licensing Agreement, which was entered into years before Bhargava gained an interest in Arena. ABG does not allege that Bhargava is a party to the Licensing Agreement, and it is axiomatic under New York[2] law that "a non-signatory to a contract cannot be named as a defendant in a breach of contract action." *Crabtree v. Tristar Auto. Group, Inc.,* 776 F. Supp. 155, 166 (S.D.N.Y. 1991). Instead, in each breach of contract count, ABG seeks to hold Bhargava personally liable by claiming that he "wrongfully used his domination of Arena **to cause it to breach the Licensing Agreement**." (Am. Compl. ¶¶ 116, 124, 133, 141, 149, 160, 170.) The following eight principles of law require dismissal of these legally insufficient Counts.

---

[2] The Licensing Agreement contains a New York choice of law provision. (Ex. 1 to Am. Compl. at § 20(g).)

1.      Whether to pierce the veil is a question of Delaware law,[3] which "does not lightly disregard the separate legal existence of corporations[.]" *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010). "Limited liability is the heart of the corporate form. Corporations may struggle, fail, and even breach contracts without forfeiting it. So disregarding limited liability by piercing the corporate veil is an extreme step. Courts will only do so when a corporation has abused its status egregiously." *Compagnie des Grands Hotels d'Afrique S.S. v. Starman Hotel Holdings LLC*, 2023 WL 5095274, at *1 (D. Del. Aug. 8, 2023).

2.      Delaware law requires proof that the corporate form was used to work "a fraud or something in the nature of a fraud." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989). To disregard the corporate form, "[e]ffectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *15 (Del. Ch. July 6, 2018).

3.      Delaware law "requires that the fraud or injustice be found in the defendants' use of the corporate form." *Mobil Oil*, 718 F. Supp. at 269; *see also In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003) (citing numerous cases for the proposition that "the fraud or similar injustice that must be demonstrated in order to pierce the veil under Delaware law must, in particular, 'be found in defendants' use of the corporate form'" and that "'[p]iercing the

---

[3] Under New York law, "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir. 1993); *see also In re Alper Holdings USA, Inc.*, 398 B.R. 736, 757 (Bankr. S.D.N.Y. 2008) (holding that Delaware law controls veil piercing analysis where parties were incorporated in Delaware). Arena is a Delaware corporation. (Am. Compl. ¶ 24.)

veil…requires that the corporate structure cause fraud or similar injustice'"); *Medi-Tec of Egypt Corp. v Bausch & Lomb Surgical*, 2004 WL 415251, at *4 (Del. Ch. Mar. 4, 2004) (rejecting alter ego claim when plaintiff failed to allege "that the corporate form in and of itself operate[d] to serve some fraud or injustice, distinct from the alleged wrongs of the [corporation]"); *Marnavi S.P.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) ("[T]he requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim.").

4.    Of great importance here, the fraud or similar injustice effectuated through abuse of the corporate form **cannot merely be the underlying breach of contract**. In *Compagnie,* the plaintiff alleged that the defendant caused its subsidiary to breach a contract because it "starved [the subsidiary] of funding." The court granted summary judgment to the defendant:

> A breach of contract, without more, does not supply the fraud or injustice required to pierce the corporate veil. There are at least two reasons for this. First, if the underlying breach that gives rise to a lawsuit also justified piercing the corporate veil, then the injustice element of the test would be meaningless. Second, mere breach of contract seldom has a causal connection to the misuse of the corporate form.

2023 WL 5095274 at *9 (citations omitted). This is an entrenched principle of Delaware law. In *Mobil Oil*, the court stated:

> Any breach of contract and any tort…is, in some sense, an injustice. Obviously this type of 'injustice' is not what is contemplated by the common law rule that piercing of the corporate veil is appropriate only upon a showing of fraud or something like fraud. The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.

718 F. Supp. at 269; *see also Foxmeyer Corp.*, 290 B.R. at 236; *Outokumpu Eng'g Enters., Inc. v.*

*Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. July 10, 1996) ("The 'injustice'

must be more than the breach of contract alleged in the complaint…").[4]

5.    A point that should be self-evident: the fraud or similar injustice effectuated through

abuse of the corporate form must damage the plaintiff and not some third party. *See Mobil Oil,* 718

F. Supp. at 269 ("'the injured party must show some connection between its injury and the parent's

improper manner of doing business—without that connection, even where the parent exercises

domination and control over the subsidiary, corporate separateness will be recognized'") (quoting

1 Fletcher Cyc. Corp. § 43)); *see also In re Magna Entm't Corp.*, 442 B.R. 88, 94 (Bankr. D. Del.

2011) (veil piercing requires a fraud or wrong "*against the plaintiff*") (emphasis added).

6.    Under Delaware law, conclusory allegations of "domination and control" are

insufficient to impose alter ego liability. *See Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at

*4 (Del. Ch. Oct. 30, 2015) ("Most importantly, 'because Delaware public policy does not lightly

disregard the separate legal existence of corporations, a plaintiff must do more than plead that one

corporation is the alter ego of another in conclusory fashion in order for the Court to disregard

their separate legal existence.'") (citation omitted); *see also Wenske,* 2018 WL 3337531 at *6

(dismissing complaint that included only "conclusory allegations of 'domination and control'");

*MicroStrategy*, 2010 WL 5550455 at *12 (conclusory allegations of control "not adequately pled").

---

[4] The same rule pertains in New York. *See, e.g.*, *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,

326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018) ("Critically, the wrongful or unjust act 'must consist of

more than merely the…breach of contract that is the basis of the [party's] lawsuit'") (citation

omitted).

11

7.    Further, "mere dominion and control of the parent over the subsidiary will not support alter ego liability." *Outokumpu,* 685 A.2d at 729. Rather, a party must plead specific facts indicating that there was "exclusive domination and control…to the point where the [company] no longer had legal or independent significance of its own." *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *see also PR Acquisitions, LLC v. Midland Funding LLC*, 2018 WL 2041521, at *15 (Del. Ch. Apr. 30, 2018) (dismissing veil piercing claim for failure to plead facts demonstrating domination or control); *Compagnie,* 2023 WL 5095274 at *4 (to pierce the corporate veil, a party must show that parent and subsidiary "operated as a single economic entity" and that "misuse of the corporate form caused fraud or injustice"); *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528-29 (D. Del. 2008) (explaining factors considered by Delaware courts in determining whether to impose alter ego liability).

8.    Under Delaware law, merely alleging that a corporation was used to facilitate the other business interests of shareholders is insufficient to impose alter ego liability as a matter of law. *Trevino*, 583 F. Supp. 2d at 529-30 (alter ego allegations that defendant established the corporation "for the purpose of facilitating their own business interests" insufficient to state a claim).

Against this backdrop, it is clear that ABG's veil piercing allegations fail to state a claim as a matter of law. <u>First</u>, the Amended Complaint does not allege that Bhargava used his purported control over Arena to perpetrate a fraud or similar injustice. ABG merely alleges, in conclusory fashion, that Bhargava "wrongfully used his domination of Arena to **cause it to breach the Licensing Agreement.**" (Am. Compl. ¶¶ 116, 124, 133, 141, 149, 160, 170.) ABG repeats the same theory of liability in its new Count VIII (Piercing the Corporate Veil/Alter Ego Liability):

- "Bhargava specifically exercised his control over Arena to cause the company to fail to make the $3.75 million Quarterly Payment due on

January 2, 2004, and the other earned royalties and commissions due for Q4 2023 and Q1 2024…" (*Id.* ¶ 177.)

- "Bhargava also caused Arena to fail to make the $45 million Termination Payment…" (*Id.*)

- "In March 2024, Bhargava caused Arena to fail to comply with its obligations under the Licensing Agreement concerning the transfer of the SI licensed business…" (*Id.* ¶ 179.)

- "Bhargava, as the controlling shareholder who wrongfully used his domination of Arena to cause it to breach Arena's obligations, is also liable for such breaches of contract." (*Id.* ¶ 180.)

These allegations run headlong into the principle that the fraudulent or similarly wrongful act required to pierce the veil under Delaware law cannot be the underlying breach of contract; therefore, they fail to state a claim against Bhargava.

Recognizing its predicament, ABG strains to identify other "wrongful acts," alleging that "Bhargava's actions were done in order to perpetrate an injustice, including but not limited to his apparent violation of labor laws, his interference with ABG's contract with Minute Media, and his wholesale theft of ABG's property rights." (Am. Compl. ¶ 181.) But the alleged "apparent violation of labor laws" affected, if anyone, Arena's unionized employees, not ABG. It has nothing do with ABG's alleged harm. And the allegations of Bhargava's "interference with ABG's contract with Minute Media" and "wholesale theft" are part of ABG's breach of contract claims—underscoring that ABG is improperly attempting to pierce the corporate veil based on its underlying breach of contract claims. (*See id.*) Moreover, these allegations relate to events that occurred long after the more than $50 million in alleged monetary breaches that ABG is trying to pin on Bhargava. (*Compare id.* ¶ 61 (Arena failed to make quarterly royalty payment on January 2, 2024) *with id.* ¶¶ 86-87 (after ABG sent demand letter at the end of March 2024, Arena began redirecting SI URLs to its own competing websites).)

<u>Second</u>, the Amended Complaint is devoid of any legally cognizable allegations of abuse of the corporate form. ABG offers that:

- "Defendant Bhargava has disregarded corporate formalities with respect to Arena and so completely dominated and/or exercised such a high degree of control over Arena that the Court should pierce the corporate veil between Arena and Bhargava, and as necessary his fully controlled corporate entities, or find that Arena is the mere alter ego of Bhargava." (Am. Compl. ¶ 174.)

- "Bhargava assumed control of Arena in the fall of 2023 and, before he had any formal role or title, used the company for his own personal means, including to benefit his other companies and products, and exercised control over the company's employees and the SI business." (*Id.* ¶ 175.)

- "Bhargava also ensured that he would have control by directing the head of Human Resources to terminate Arena's Operations President and Chief Operating Officer, Media President, and General Counsel, and then installing himself as interim CEO, even though he had no authority to do either." (*Id.* ¶ 176.) ABG further alleges that Bhargava "compelled Arena's board to retroactively authorize the terminations a week later." (*Id.* ¶ 53.)

- "In addition to abusing corporate formalities, Bhargava represented that Arena was unable to pay amounts due to ABG because it was undercapitalized…" (*Id.* ¶ 178.) At the same time, ABG alleges that "Arena certainly had more than enough money to make the royalty payment…" (*Id.* ¶ 12.)

- ABG also alleges that Bhargava caused Arena to fail to make the $3.75 million quarterly payment under the Licensing Agreement "in furtherance of his personal aim to create a pretext to terminate Arena's unionized employees" and caused Arena to fail to make the $45 million termination payment "in furtherance of his personal aim to force ABG to renegotiate the Licensing Agreement's terms." (*Id.* ¶ 177.) ABG alleges Bhargava did this "in order to terminate and replace the Licensing Agreement with an entirely new contract with terms that were more favorable to him and Arena." (*Id.* ¶ 58.)

These allegations, even accepted as true for purposes of this Motion, do not remotely constitute an abuse of the corporate form. In any event, the only harm to ABG that it alleges was effectuated through the "abuse of the corporate form" was breach of the underlying Licensing Agreement—something that, as discussed, supplies no basis to pierce the corporate veil.

Leaving aside ABG's conclusory allegations of "domination and control," as required by Delaware law, the only specific facts alleged by ABG are that Bhargava, who was in the process of making substantial investments in Arena, used his influence to (1) persuade Arena's Director of Human Resources to fire certain employees and later convince Arena's board to ratify those terminations (Am. Compl. ¶¶ 53, 176) and (2) cause Arena to breach the Licensing Agreement (*id.* ¶ 177). These are not allegations that Arena "no longer had legal or independent significance of its own," *Wallace*, 752 A.2d at 1184, or that Arena and Bhargava operated as a "single economic entity," *Compagnie,* 2023 WL 5095274 at *4, or that Arena was a "sham and exist[ed] for no other purpose than as a vehicle for fraud," *Wenske*, 2018 WL 3337531 at *15.

ABG attempts to prop up these legally insufficient allegations with irrelevant allegations about Bhargava's motivations. ABG alleges that Bhargava acted to "benefit his other companies and products," (Am. Compl. ¶ 175), which is precisely the kind of innocuous allegation rejected as a basis for veil piercing in *Trevino.* Further, the only concrete factual allegations supporting this contention are that (1) Bhargava and two members of Arena's public relations team use email addresses associated with other Bhargava entities (*id.* ¶ 60); (2) SI's homepage contained a 5-Hour Energy logo and a video player from Bridge Media (*id.*); and (3) Bhargava met with several SI Swimsuit models regarding marketing and advertising campaigns (*id.* ¶ 51). None of these allegations has any connection to ABG's alleged harm and none constitutes an abuse of the corporate form. It is well established that the use of "non-[corporate] email addresses to conduct corporate business [does not] reflect the type of disregard of corporate formalities that would justify departing from the general presumption against piercing the corporate veil." *Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 206 (S.D.N.Y. 2010); *see also Contractual Obligations Prods. LLC v. AMC Networks, Inc.*, 2007 WL 9683718,

at *6 (S.D.N.Y. Mar. 30, 2007) (email address was "plainly insufficient to demonstrate the type of 'complete dominion' or 'fraud' required to pierce the corporate veil").

ABG likewise asserts that Bhargava caused Arena to breach the Licensing Agreement in furtherance of "personal aim[s]." (Am. Compl. ¶¶ 177.) Specifically, ABG alleges that Bhargava caused Arena to breach the Licensing Agreement "in furtherance of his personal aim to force ABG to renegotiate the Licensing Agreement's terms" (*id.*) and to "replace the Licensing Agreement with an entirely new contract with terms that were more favorable to him and Arena" (*id.* ¶ 58). Calling this a "personal aim" does violence to the English language. ABG further claims Bhargava caused Arena to breach the Licensing Agreement "in furtherance of his personal aim to create a pretext to terminate Arena's unionized employees" (*id.* ¶ 177), also not a "personal aim" and an allegation that has nothing whatsoever to do with the harm allegedly suffered by ABG.

In the Amended Complaint, ABG also adds the allegation that Bhargava represented that Arena was unable to perform under the Licensing Agreement because it was "undercapitalized." (*Id.* ¶ 178.) At the same time, ABG alleges that "Arena certainly had more than enough money to make the royalty payment…" (*Id.* ¶ 12.) These conflicting allegations are irrelevant for the reason already stated: the alleged wrongful action that harmed ABG was the breach of the Licensing Agreement, which cannot support ABG's veil piercing theory. Moreover, a "shortage of capital…is not per se a reason to pierce the corporate veil…Rather, the inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business." *Trevino*, 583 F. Supp. 2d at 530 (quotation marks and citation omitted).

Here, the Licensing Agreement was entered into and performed by the parties for **four years before Bhargava had any interest in or involvement with Arena**. (Am. Compl. ¶ 34.) ABG alleges that Arena had "significant debt" (*id.* ¶ 45) and that "Bhargava gained indirect control of Arena through his substantial minority position and ownership of Arena's debt" (*id.* ¶ 52). Accepting as true that Bhargava said during negotiations that Arena could not continue to make payments under the existing Licensing Agreement, that allegation may establish that Arena was struggling or that Bhargava was driving a hard bargain, but it is not the kind of "undercapitalization" that is relevant to a veil piercing theory. *Trevino*, 583 F. Supp. 2d at 530.

It is important to note what ABG does not allege. ABG does not claim that the 2019 Licensing Agreement was a sham transaction or that Bhargava – who had no connection to Arena at the time – tricked ABG into entering into it. (*See generally* Am. Compl.) ABG does not allege that Arena's corporate records were not maintained; in fact, it references Arena's public filings in the Amended Complaint. (*Id.* ¶¶ 19, 56.) ABG does not assert that Bhargava commingled his personal funds with Arena's funds or that he siphoned money from Arena and rendered it unable to make the payments under the Licensing Agreement. (*See generally id.*) At bottom, the only thing ABG claims is that Arena breached the Licensing Agreement. It should litigate that claim with Arena, not Bhargava.

### III.   ABG's "Piercing the Corporate Veil/Alter Ego Liability" claim (Count VIII) fails because that is not an independent cause of action.

In Count VIII, ABG purports to assert a separate cause of action for veil piercing/alter ego liability. (*See* Am. Compl. ¶¶ 173-182.) This Count fails to state a claim because New York law does not recognize veil piercing as a separate cause of action. *See, e.g., Carruthers v. Flaum*, 365 F. Supp. 2d 448, 474 (S.D.N.Y. 2005) (citing numerous cases for the proposition that "New York law does not recognize a separate cause of action to pierce the corporate veil"); *Wang v. New York-*

*New Jersey Section of the Ninety-Nines, Inc.*, 2018 WL 3432744, at *4 (S.D.N.Y. June 4, 2018) (standalone alter ego claim legally insufficient because New York does not recognize a separate cause of action to pierce the corporate veil); *Chiomenti Studio Legale, L.L.C. v. Prodos Capital Mgmt. LLC*, 140 A.D.3d 635, 636 (N.Y. App. Div. 2016).[5]

### IV.     ABG fails to state a claim for tortious interference against Bhargava (Count IX).

ABG's tortious interference claim against Bhargava (Am. Compl. ¶¶ 183-189) fares no better and should be dismissed for three reasons.

<u>First</u>, ABG has not alleged that Minute Media has breached its agreement with ABG. This is fatal to its tortious interference claim. In New York, a tortious interference with a contract claim requires an "actual breach of the contract." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996) (affirming dismissal of tortious interference claim when plaintiff did not allege that third party had breached its contract with plaintiff); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (same).

ABG instead alleges that Bhargava and Arena "**sought to procure** the breach of ABG-SI's agreement with Minute Media…" and that "[a]s a result of Defendants' actions, ABG-SI has sustained and continues to sustain significant damages…" (Am. Compl. ¶¶ 187, 189.) But courts have repeatedly declined to allow tortious interference claims based on the theory that the alleged

---

[5] The same is true under Delaware law. *See, e.g.*, *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 n.10 (D. Del. 2010) ("[P]iercing the corporate veil is not itself an independent [ ] cause of action, but rather is a means of imposing liability on an underlying cause of action"); *RBATHTDSR, LLC v. Project 64 LLC*, 2020 WL 2748027, at *6 (D. Del. May 27, 2020) (Delaware does not recognize a separate cause of action to pierce the corporate veil).

tortfeasor made performance of a contract more burdensome or difficult, as opposed to causing an actual breach. *See, e.g.*, *D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 66 (2d Cir. 1998) (holding that New York courts have never accepted this theory); *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 664 N.E.2d 492, 495 (N.Y. 1996) (rejecting the argument that "damages should be punishable as tortious interference whether or not the contract was actually breached" and holding that "New York law is to the contrary"); *Herrick Co., Inc. v. Vetta Sports, Inc.*, 1996 WL 434571, at *4 (S.D.N.Y. Aug. 2, 1996) ("New York law does not recognize a cause of action for tortious interference with business relations when the only effect of the interferer's conduct was to make the performance of the contract more expensive or burdensome."); *Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 164 F. Supp. 3d 104, 111-12 (D.D.C. 2016) (rejecting as insufficient allegation that alleged interferer procured breach of contract and diminished contract value because "[s]tate and federal courts interpreting New York law have repeatedly emphasized that recoverable damages must *result from* a breach of contract") (emphasis in original); *Marzullo v. Beekman Campanile, Inc.*, 2011 WL 3251507, at *3-4 (S.D.N.Y. July 22, 2011).

Second, and relatedly, ABG has not alleged that Bhargava's actions **caused** Minute Media to breach its contract with ABG. Tortious interference plaintiffs must specifically "allege that the contract would not have been breached 'but for' the defendant's conduct." *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (N.Y. App. Div. 2006) (reversing and ordering dismissal of tortious interference claim). Since ABG has not alleged that Minute Media did, in fact, breach its contract, it follows that it has not alleged that Bhargava's conduct was the but-for cause of that breach. *Kirch*, 449 F.3d at 402, n.6 ("Having failed sufficiently to allege actual breach, it follows that the plaintiffs have not alleged facts sufficient to fulfill the third element, procurement of the third-party's breach of the contract without justification"); *TileBar v. Glazzio Tiles*, 2024 WL 1186567,

19

at *21 (E.D.N.Y. Mar. 15, 2024) (dismissing tortious interference claim when plaintiff did not allege that defendant's actions were the but-for cause of the breach); *Snowbridge Advisors LLC v. ESO Capital Partners UK LLP*, 589 F. Supp. 3d 401, 420-21 (S.D.N.Y. 2022); *Kimso Apartments, LLC v. Rivera*, 119 N.Y.S.3d 519, 522 (N.Y. App. Div. 2020) (reversing and ordering dismissal of tortious interference claim on similar grounds).

Third, ABG has not alleged facts sufficient to support a tortious interference claim against Bhargava as an individual. As with its breach of contract claims, ABG would have to pierce Arena's corporate veil to hold Bhargava personally liable for his conduct as Arena's CEO and shareholder. *See Westbury Recycling, Inc. v. Westbury Transfer & Recycling, LLC*, 177 N.Y.S.3d 101, 104-05 (N.Y. App. Div. 2022) (affirming dismissal of tortious interference claim against individual CEO when complaint did not allege facts sufficient to support piercing the corporate veil); *Sparig v. Danenberg*, 2013 WL 12358424, at *9 (E.D.N.Y. Aug. 9, 2013) (recommending denial of leave to amend complaint to assert tortious interference claims against individual shareholder when plaintiff did not plead facts sufficient to pierce the corporate veil). As explained above, ABG's veil piercing allegations are insufficient as a matter of law.

**V.    ABG's claim for conversion (Count X) must be dismissed.**

ABG's claim seeking "damages to compensate for [Defendants'] conversion of SI brand rights" must be dismissed. (Am. Compl. ¶ 196.)

A viable claim for conversion "must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Advanced Knowledge Tech., LLC v. Fleitas*, 2021 WL 6126966, at *6 (S.D.N.Y. Dec. 28, 2021) (dismissing a conversion claim for monies that were not "specifically identifiable" nor "described or identified in the same manner as a specific chattel"). ABG's mere references to "SI brand rights"

(Am. Compl. ¶ 196) and "all right, title, and interest in and to the SI editorial and media content, trademarks, and other intellectual property, and materials related to the SI Licensed Businesses, including Consumer Data" (*id.* ¶ 192) are so vague as to defy that specificity requirement.

Regarding alleged conversion of trademarks, "it is well settled, and quite easy to determine with minimal legal research, that there is no action for trademark conversion." *Lemonis v. A. Stein Meat Prods.,* 2015 WL 997987, at *5 (E.D.N.Y. March 6, 2015) (citation omitted); *see also Ortega v. Burgos*, 2014 WL 2124957, at *1 (E.D.N.Y. May 22, 2014) (dismissing trademark conversion claim because "not only has this Court been unable to find any authority that recognizes trademark conversion, the leading treatise on trademark law states that, '[e]very court to consider such a claim has rejected it'") (citation omitted); *Grgurev v. Licul,* 229 F. Supp. 3d 267, 286-87 (S.D.N.Y. 2017).

Moreover, to the extent that ABG bases its conversion claim on Bhargava's alleged use of SI editorial and media content and a compilation of consumer data without a license (*see* Am. Compl. ¶¶ 192, 195), the conversion claim must be dismissed because it is preempted by the Copyright Act. "The Copyright Act 'exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. § 102 and § 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106.'" *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *6 (S.D.N.Y. Oct. 30, 2014) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004)).

The literary and pictorial works that ABG alleges were used are recited in 17 U.S.C. § 101. Likewise, compilations are covered in 17 U.S.C. § 103. In addition, the alleged unauthorized copying of the works and public display of them at Arena's competing website (Am. Compl. ¶¶ 91-94) fall within the scope of exclusive rights conferred by the Copyright Act: the right to

reproduce works is recited in 17 U.S.C. § 106(1) and the right to display works publicly is recited in 17 U.S.C. § 106(5). As such, the conversion claim is coextensive with the copyright infringement claim, requiring its dismissal as preempted by the Copyright Act. *See Avalos*, 2014 WL 5493242 at *7 (dismissing as preempted by the Copyright Act a conversion claim alleging unauthorized publication of photographs); *Flaherty v. Filardi*, 2007 WL 2734633, at *6 (S.D.N.Y. Sept. 19, 2007) (holding conversion claim preempted by Copyright Act); *Archie Comic Pubs., Inc. v. DeCarlo*, 141 F. Supp. 2d 428, 432 (S.D.N.Y. 2001) (same).

**VI.    Because ABG's direct copyright infringement claim is pleaded insufficiently, the secondary copyright infringement claims against Bhargava (Counts XII-XIII) must be dismissed.**

"Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018); *see also Lane Coder Photography, LLC v. Hearst Corp.*, 2023 WL 5836216, at *4 (S.D.N.Y. Sept. 8, 2023) (to plead a viable claim for contributory copyright infringement, a plaintiff must adequately "plead a claim for direct infringement" (citing *Lefkowitz v. John Wiley & Sons, Inc.*, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014))).

In this case, because ABG's direct copyright infringement claim (Am. Compl. ¶¶ 197-204) is pleaded insufficiently, the dependent contributory and vicarious copyright infringement claims (*id.* ¶¶ 205-220) must be dismissed.

"The elements of a [direct] copyright infringement claim are: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. […] [T]o plead these elements sufficiently for purposes of [Fed. R. Civ. P. 8(a)], a complaint must allege: (1) which specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) a description of the specific acts, including time frame, allegedly committed by the defendant that

infringed on the copyright." *U2 Home Entm't, Inc. v. Kylin TV, Inc.*, 2007 WL 2028108, at *5 (E.D.N.Y. July 11, 2007) (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)).

Regarding the first *Kelly* requirement, "[c]ourts have repeatedly rejected the use of […] conclusory and vague allegations […] as a substitute for allegations that specify the original works that are the subject of a copyright claim." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012). Absent specific identification of **all works alleged to have been infringed**, the accused infringer has insufficient notice of the claim, causing such claim to fail. *Plunket v. Estate of Conan Doyle*, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (plaintiff who "provides a […] schedule of the works […] and provides copyright registration numbers for nine of these works […] but contends that her copyright claims are not limited to these works. […] fails to meet the first *Kelly* requirement") (citation omitted). "Not only is it inadequate to base an infringement claim on overly-inclusive lists of copyrighted works, but it is also insufficient to list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works." *Cole*, 2012 WL 3133520 at *12 (citation omitted); *see also DiMaggio v. Int'l Sports Ltd.*, 1998 WL 549690, at *2 (S.D.N.Y. Aug. 31, 1998) (copyright infringement claim dismissed because plaintiff failed to specify which original works were the subject of the copyright claim, referring merely to "nebulous multiple images"); *Cole v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942); *Williams v. D'Youville Coll.*, 2022 WL 18494425, at *6 (W.D.N.Y. Sept. 29, 2022).[6]

---

[6] Moreover, 17 U.S.C. § 411(a) requires that a work of authorship be registered with the U.S. Copyright Office before a claim for copyright infringement can be asserted. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019). It is impossible from ABG's

ABG alleges infringement of its copyrights in "each of the Registered Magazines." (Am. Compl. ¶ 200.) "Registered Magazines" are vaguely defined as "the content of the *Sports Illustrated* April 2020 issue Volume 131, No. 4 (Copyright Registration No. TX0009026524, registered Nov. 12, 2020), […] together with other such registered content." (*Id.* ¶ 93.) Other than the *Sports Illustrated* April 2020 magazine issue and the content reproduced as the Amended Complaint's Exhibits 10 and 11, ABG does not identify any of the decades' worth of magazine issues alleged to be infringed or the particular content within those periodicals allegedly infringed. Because ABG's direct copyright infringement claim fails the first *Kelly* pleading requirement, the dependent secondary liability claims fail as well.  *See Klauber Bros., Inc. v. M.J.C.L.K., LLC*, 2022 WL 5108902, at *8 (S.D.N.Y. Oct. 4, 2022).

ABG also fails to plead contributory and vicarious copyright infringement claims against Bhargava because it does not allege that he had the requisite knowledge of the infringing activity. "As for the main elements of a contributory infringement claim, […] a plaintiff must show that the defendant (1) had actual or constructive knowledge of the infringing activity, and (2) encouraged or assisted others' infringement." *Lane Coder*, 2023 WL 5836216 at *4 (citing *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011)).

As ABG has not identified the particular works or content allegedly infringed, it necessarily has not alleged what knowledge Bhargava allegedly had or what encouragement or assistance he provided to alleged infringing activities. ABG alleges only, without explanation or support, that "Bhargava has induced, caused, assisted, or materially contributed to the infringing conduct of

---

pleading of its copyright infringement claim to determine whether or to what extent content supposedly infringed is registered.

Arena" (Am. Compl. ¶ 214) and that "Bhargava has provided the means for the infringing conduct of Arena" (*id.* ¶ 215). ABG does not allege that Bhargava had any personal involvement with the alleged infringed works' management, publication, or use or decisions concerning them. ABG does not explain or even infer how Bhargava is supposed to have provided such assistance or encouragement. ABG does not plead or infer that Bhargava knew or should have known of infringing activities or that he assisted them substantially, as required for liability for contributory copyright infringement.

Likewise, ABG does not allege or reasonably infer the nature of the obvious and direct financial benefit to Bhargava in the alleged infringing activities. *Softel*, *Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (individual defendant's capacity as president and shareholder too attenuated to establish a direct financial interest in the defendant company's exploitation of copyrighted materials); *see also J & J Sports Prods., Inc. v. Abdelraouf,* 2018 WL 7916309, at *7 (E.D.N.Y. Nov. 21, 2018) (allegations of supervisory titles are insufficient to establish individual liability; rather, plaintiff is required to "allege nonformulaic facts setting forth the individual Defendant's […] financial interest in the [alleged infringement]").

ABG's failure to plead sufficiently the elements of its contributory copyright infringement and vicarious copyright infringement liability claims requires their dismissal. *Klauber Bros., Inc. v. URBN US Retail LLC*, 2022 WL 1539905, at *11 (S.D.N.Y. May 14, 2022).

**VII.    Plaintiffs' claim for trademark infringement (Count XVI) must be dismissed.**

Plaintiffs' claim for trademark infringement (Am. Compl. ¶¶ 237-241) against Bhargava must be dismissed. An individual defendant will be liable for a corporation's trademark infringement only if he is the "moving, active, conscious force" behind the corporation's infringing activity. *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155

(E.D.N.Y. 2016). A defendant is not that force if the only allegation is that the defendant holds a particular title "without alleging that [the defendant] authorized or approved any allegedly infringing action." *Kuklachev v. Gelfman,* 2009 WL 804095, at *5 (E.D.N.Y. Mar. 25, 2009). Mere assertion that an individual defendant is a corporate officer is insufficient to sustain individual liability for the corporation's trademark infringement. *Eu Yan Sang Int'l Ltd. v. S & M Enters. (U.S.A.) Enter. Corp.*, 2010 WL 3824129, at *2 (E.D.N.Y. Sept. 8, 2010). Rather, "a corporate officer is considered a moving, active, conscious force behind a company's infringement when the officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." *Innovation Ventures*, 176 F. Supp. 3d at 155 (cleaned up); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 2011 WL 3678802, at *6 (S.D.N.Y. Aug. 19, 2011) ("Whether [individual defendant] was an officer for Queen Bee does not determine his liability; rather it is his participation in the infringing conduct that is determinative.").

The Amended Complaint does not allege facts to support that Bhargava authorized or approved Arena's alleged trademark infringement or otherwise directly participated in it, nor does it allege facts from which such allegations can be inferred. Instead, Plaintiffs plead only the threadbare allegation that "Bhargava was the moving, active, conscious forces [*sic*] behind Arena's infringing activity as they [*sic*] authorized and approved the underlying infringement" (Am. Compl. ¶ 240), relying solely on Bhargava's title and capacity at Arena to try to bootstrap their trademark infringement claim against him. That claim also must be dismissed.

## CONCLUSION

ABG has injected a defective veil piercing theory into this dispute between corporations in a misguided effort to create leverage. For the foregoing reasons, Bhargava respectfully requests that the Court dismiss the claims against him.

Dated: August 30, 2024

Respectfully submitted,

S/ *Joseph E. Viviano*
Joseph E. Viviano (*admitted pro hac vice*)
Eric J. Pelton (*admitted pro hac vice*)
David A. Porter (*admitted pro hac vice*)
Lauren J. Walas (*admitted pro hac vice*)
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
Phone: (248) 645-0000
Facsimile: (248) 458-4581
jviviano@kvhpf.com
epelton@khvpf.com
dporter@khvpf.com
lwalas@khvpf.com

*Attorneys for Defendant Manoj Bhargava*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law in Support of Defendant Manoj Bhargava's Motion to Dismiss contains 8,528 countable words and complies with Judge Koeltl's formatting rules. *See* Individual Practices of Judge John G. Koeltl. Microsoft Word (Version 2302) was used to calculate the word count.

S/ *Joseph E. Viviano*
Joseph E. Viviano