# EXHIBIT A






**PARTNER AGREEMENT**

| **Partner:** | [redacted] LLC, [redacted] limited liability company |
|---|---|
| **Effective Date:** | 2/22/24 |

| **Channel Name** | **Domain(s)** | **Subject Matter** |
|---|---|---|
| Inside The Marlins | Si.com/mlb/marlins | Miami Marlins |
| | | |

This Partner Agreement (this "***Agreement***") by and between The Arena Platform, Inc., a Delaware corporation ("***Arena***") and the Partner named in the table above ("***Partner***") is effective as of the Effective date set forth in the table above (the "***Effective Date***"). Arena and Partner are sometimes referred to herein collectively as the "***Parties***" and individually as a "***Party***." Unless otherwise defined herein or unless the context otherwise requires, capitalized terms used herein shall have the respective meanings set forth in the Platform Use Terms (as defined below).

**RECITALS**

**WHEREAS**, Arena has developed a proprietary online publishing platform that provides partners the ability to produce and manage editorially-focused content and community interaction through tools and Services provided by Arena (the "***Platform***");

**WHEREAS**, Arena has also developed proprietary advertising technology, techniques and relationships that allow content owners and managers to monetize online editorially-focused content through various display and custom content advertising solutions and services (the "***Advertising Solutions***" and, together with the Platform, the "***Services***");

**WHEREAS,** Partner is in the independently established trade and business of creating Partner Content (as defined in the Platform Use Terms) and making such Partner Content available to online users operates and makes available to online users at the Internet domain or domains set forth on the table above (each domain, a "***Domain***" and, collectively, all the Domains and together with such content, the "***Assets***") in each case with respect to the subject matter (the "***Subject Matter***") set forth alongside each such Domain in the table above;

**WHEREAS,** Partner desires use of the Services to produce, manage, host and monetize the Assets, all in accordance with the terms and conditions set forth below.





# AGREEMENT

NOW THEREFORE, in consideration of the foregoing and the mutual agreements and covenants hereinafter set forth, the Parties hereby agree as follows:

1. PROVISION OF PLATFORM SERVICES.

a. Launch. In the event that a Domain is not already live on the Platform, following the Effective Date and, as applicable, from time to time as additional Domains are added to this Agreement by agreement of the Parties, Arena and Partner will develop a timeline for the launch of the Domain on the Platform (such launch of a Domain on the Platform, the "***Launch***", and the date of Launch, the "***Launch Date***" of such Domain). In the event Arena and Partner have not elected to Launch the Domain on the Platform within a reasonable period of time, which will not exceed one month following the Effective Date, Arena may provide written notice to Partner to remove the Domain from this Agreement and, in the event no other Domain is then included in this Agreement, terminate the Agreement.

b. The Platform. Arena will at its cost host, maintain, operate and administer the Platform, including all structural, layout, design and technological matters with respect to the Platform.

c. Access to Services. Within a reasonable time following the Effective Date and prior to the Launch Date, Arena will make the Platform available for Partner's use via secure log-in in accordance with the Service Level Agreement set forth as **Exhibit A** hereto. Partner shall access and use the Platform and the user interface strictly in accordance with the training and guidelines provided by Arena. Arena will provide Partner a designated account manager to work with Partner on all matters related Partner's use of the Services.

d. Platform Use Terms. This Agreement is subject to the Arena Platform T4 Partner Platform Use Terms ("***Platform Use Terms***"), the terms of which are set forth at https://thearenagroup.net/t4-partner-platform-use-terms/ and which Platform Use Terms are incorporated herein. All capitalized terms not defined in this Agreement have the meaning set forth in the Platform Use Terms.

2. REVENUE SHARING; ADVERTISING OPERATIONS.

a. Revenue Share. Revenue received from the Assets will be allocated and paid out as follows:









b. Payment. Revenue Share in respect of each calendar month shall be paid

c. Ownership. As between the parties, (i) Arena and its Affiliates own and retain all right, title, and interest in and to the Platform, the Domains (including domain names associated with the Domains and all renewal obligations for the domain names associated with the Domains), Advertising Solutions, Asset Data collected by Arena, Arena and its licensors' trademarks and branding and all software and technology Arena uses to provide and operate the Platform and Advertising Solutions and (ii) subject to Arena's rights set forth in the Platform Use Terms and to the terms of any applicable Opt-In Agreement, Partner owns and retains all right, title, and interest in and to the Partner Content. Each Party reserves all other rights not expressly granted herein.

d. URL Strategy.







[redacted]

e. Traffic Assignment. Subject to the terms and conditions set forth herein and in exchange for the Services, Partner hereby grants Arena for so long as the Assets are hosted on the Platform (i) exclusive control of ads.txt with respect to the Domains and [redacted] Partner will execute, within five business days following Arena's request therefor, all necessary documents required to effectuate the purpose of this Section 3(e), including, but not limited to, a standard form of traffic assignment letter.

3. TERM AND TERMINATION.

The term of this Agreement (the "***Term***") commences on the Effective Date and continues until terminated by either Party for any of the following reasons: (i) Partner may terminate this Agreement with respect to a particular Domain (or, if Partner has no other Domains then on the Platform or undergoing Migration, terminate the entire Agreement) for any reason or no reason at all at any time after the twelve month anniversary of the Launch Date of such Domain by providing 30 days' written notice to Arena, (ii) Partner may terminate this Agreement upon a SLA Breach (as defined in **Exhibit A** hereto) if not cured within 10 days following written notice to Arena specifying the SLA Breach, (iii) Arena may terminate the entire Agreement or terminate the Agreement with respect to a particular Domain for any reason or no reason at all at any time by providing 30 days' written notice to Partner, and (iv) either Party may terminate the entire Agreement or terminate the Agreement with respect to a particular Domain, at their election, immediately upon written notice to the other Party if such other Party breaches or fails to materially perform any covenant or obligation contained herein or if any representation or warranty made by the other Party hereunder ceases to be true and correct in all respects, and such breach, failure or cessation continues uncured for 20 days after the breaching Party receives notice from the other Party.

4. MISCELLANEOUS.

a. No Public Announcements. Unless otherwise required by applicable Law (based upon the reasonable advice of counsel), Partner shall not make any public announcements in respect of this Agreement or the transactions contemplated hereby or otherwise communicate with any news media without Arena's specific prior written consent in each instance, and the Parties shall cooperate as to the timing and contents of any such announcement.

b. Governing Law; Jurisdiction. This Agreement will be governed by, and interpreted in accordance with, the laws of the United States of America and the laws of the State of New York, without reference to conflict of laws principles. The Parties specifically exclude the United Nations





Convention on Contracts for the International Sale of Goods and the Uniform Computer Information Transactions Act from application to this Agreement. In the event of a dispute, each Party submits itself to the exclusive jurisdiction of the state and Federal courts located in New York County, New York.

c. Assignment. Neither Party may assign this Agreement without the prior written consent of the other Party, provided that (i) either Party may assign this Agreement without the other Party's prior written consent to an entity that acquires all or substantially all of its business or assets, whether by merger, reorganization, acquisition, sale or otherwise and (ii) Arena may assign to an Affiliate of Arena without Partner's prior written consent. Any assignment made in conflict with this provision will be void subject to the foregoing. This Agreement will benefit and bind the permitted successors and assigns of the Parties.

d. Partial Invalidity. In the event that any provision of this Agreement is held by a court or other tribunal of competent jurisdiction to be unenforceable, such provision will be limited or eliminated to the minimum extent necessary to render such provision enforceable and, in any event, the remainder of this Agreement will continue in full force and effect.

e. Waiver and Amendment. No modification, amendment, or waiver of any provision of this Agreement will be effective unless such amendment or waiver is made in writing and signed by authorized representatives of both Parties.

f. Independent Contractors. The relationship of Arena and Partner established by this Agreement is that of independent contractors, and nothing contained in this Agreement will be construed to constitute the Parties as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking, or allow either Party to create or assume any obligation on behalf of the other Party. All financial obligations associated with a Party's business are the sole responsibility of such Party.

g. Force Majeure. Neither Party will have any liability for any failure or delay resulting from any condition beyond the reasonable control of such Party, including but not limited to governmental action or acts of terrorism, earthquake or other acts of God, labor conditions, and power failures.

h. Notice. All notices and other communications in connection with this Agreement will be in writing and will be considered given (a) immediately upon personal delivery, via fax or electronic mail to the recipient's address as stated on this Agreement, (b) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt, or (c) three days after being deposited in the United States mail for delivery by registered or certified mail, return receipt requested, with postage prepaid to the recipient's address as stated on this Agreement.

i. Rules of Construction. In this Agreement, except to the extent that the context otherwise requires, the following rules of construction will apply: (a) the headings for this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement; (b) whenever the words "include," "includes" or "including" are





used in this Agreement, they are deemed to be followed by the words "without limitation"; (c) the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms; and (d) references to a person or entity are also to its permitted successors and assigns. In the event of a conflict between the terms of this Agreement and the Platform Use Terms, the terms of the Platform Use Terms will prevail. All dollar amounts set forth herein are in U.S. currency.

j. Survival of Terms. Sections of 2(c), 3 and 4 this Agreement and Sections 2(d) and 6 through 11 of the Platform Use Terms will survive any termination of this Agreement.

k. Entire Agreement. The terms and conditions herein and in the Platform Use Terms, or other agreements entered into between the Parties after the date hereof, constitute the entire agreement between the Parties and supersede all previous agreements and understandings, whether oral or written, between the Parties hereto with respect to the subject matter hereof.

[*Signature Page Follows*]






The parties have executed this Agreement on the respective dates set forth below.

**THE ARENA PLATFORM, INC.:**

Signature: ______________________

Printed Name: Eric Aledort

Title: SVP, Business Development

Address: 200 Vesey Street, 24th Floor
New York, NY 10281
Email: legal@thearenagroup.net

[REDACTED]

Signature: ______________________

Printed Name:

Title:

Address:

Phone:

Email:






**EXHIBIT A**

**SERVICE LEVEL AGREEMENT**

**Service Level Requirements.** Arena will maintain the requirements ("***Service Level Requirements***") set forth below.

A. **Availability:** "***Availability***" is the measure of the ability of (i) third parties to access the Assets from the Internet and (ii) Partner to access the Services from the Internet, each as separately measured from 12:00 am PT on the first day of a month to 11:59 pm PT of the last day of a month. Availability will be measured by a method solely determined by Arena. Periodically, Arena will schedule maintenance windows ("***Maintenance Windows***") solely outside of the following hours: 3 am PT to 10:59 pm PT, Monday to Friday. Arena will use commercially reasonable efforts to (x) provide at least five days prior notice of a Maintenance Windows and (y) limit such Maintenance Windows to a maximum of four hours for every calendar month. Maintenance Windows will not be counted toward the Availability percentages defined above.

B. **Service Level Commitment:** Arena will use commercially reasonable efforts to maintain at least 99% Availability. In the event Availability in any two of three consecutive months falls below 99% (a "***Service Level Breach***"), Partner's sole remedy will be the termination rights set forth in Section 3 of the Agreement.

C. **Permitted Downtime:** The occurrence of any one of the following events will constitute an exception to Arena's obligation to meet the Availability and Support requirements, and will be considered "***Permitted Downtime***":

   i. An outage, slowdown, failure or delay that is due to the failure or non-performance of any equipment, connections, entities, individuals, or Services that are not under Arena's control, including, but not limited to, peer-to-peer Internet Services provider routing, third-party data center failure, collocation providers, insufficient or inadequate third-party bandwidth or technology, wireless carrier unavailability, etc.; or

   ii. An outage, slowdown, failure or delay that is caused by an event that is beyond the control of Arena, including, but not limited to, acts of God, acts of any government in its sovereign or contractual capacity, terrorist acts, fires, floods, snowstorm, earthquakes, epidemics, quarantine restrictions, wars, riots, rebellions, insurrections or civil unrest, strikes or other work stoppages, Internet viruses, hacker attacks such as denial of Services, and general Internet brown-outs, black-outs and slowdowns.