

|  | Address: | 280 N. Old Woodward Suite 400 Birmingham, MI 48009 | 12900 Hall Road Suite 190 Sterling Heights, MI 48313 |
|---|---|---|---|
|  | Phone: | 248.645.0000 | 586.469.1580 |
|  | Fax: | 248.458.4581 | 586.469.1399 |
|  | Website: | khvpf.com |  |

February 24, 2025

*VIA ECF*

The Honorable Judge John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    Defendant Manoj Bhargava's Response to Letter Requesting Pre-Motion Conference on Plaintiffs' Proposed Second Amended Complaint

Dear Judge Koeltl:

    I am writing on behalf of Defendant Manoj Bhargava in response to Plaintiff ABG's February 18, 2025, letter requesting a pre-motion conference on its proposed motion for leave to file a Second Amended Complaint. From the start, ABG's inclusion of Mr. Bhargava in his individual capacity in this business-to-business dispute has been a misguided attempt to generate leverage, and ABG's current request for leave to file a Second Amended Complaint is a futile, dilatory, and bad faith continuation of that effort. Mr. Bhargava requests that the Court deny leave to file this motion.

    ABG filed this case on April 1, 2024, nearly a full year ago. On May 31, 2024, Mr. Bhargava—the only non-corporate party—filed a letter with the Court requesting leave to file a motion to dismiss ABG's claims due to numerous deficiencies in the veil piercing and other allegations against him. The Court held a telephonic conference and allowed ABG to file an amended complaint. After initially taking the position that amendment was unnecessary, ABG filed its First Amended Complaint on August 1, 2024. Mr. Bhargava filed a motion to dismiss the First Amended Complaint on August 30, 2024. ABG filed its response on October 15, 2024. Notably, in its response brief, though such allegations are nowhere stated in the Complaint or the First Amended Complaint, ABG argued that (1) its veil-piercing allegations were supported by Mr. Bhargava's supposed "stripping of Arena's assets" and (2) the Court should consider the unspoken claim that Mr. Bhargava tortiously interfered with the Arena-ABG Licensing Agreement at the center of this dispute. ABG did not move to amend its First Amended Complaint at that time, and Mr. Bhargava filed his reply brief on October 30, 2024. Thus, the briefing on that motion has been fully submitted for nearly four months.

February 24, 2025
Page 2

Now, under the guise of supposedly newly discovered information (perhaps not coincidentally, in the midst of ongoing settlement discussions between the parties), ABG requests that the Court allow it to amend its claims yet again. ABG does not tell the Court or Mr. Bhargava the names or job titles of the people who provided the "new information," how they knew it, when they provided it, precisely what they said, or how it connects to ABG's claims or alleged harm. Instead, consistent with ABG's unfortunate practice of injecting extraneous personal attacks and smears into this case (*See e.g. First Am. Compl.* at ¶¶ 9, 47-48), ABG claims that unnamed "former Bhargava associates" have "recently" told ABG that:

(1) "On information and belief," Mr. Bhargava caused Arena to run discounted advertisements for his other companies on the Sports Illustrated website (*Sec. Am. Compl.* at ¶¶ 54, 123), allegations ABG already made in the First Amended Complaint (*See id.* at ¶ 60);

(2) Mr. Bhargava "caused Arena to lease space from one of his other closely held companies" (*Sec. Am. Compl.* at ¶ 54), irrelevant allegations having no connection to ABG's alleged harm and providing no support for its flawed veil-piercing theory; and

(3) Mr. Bhargava "routinely shifts assets among several closely held entities," allegations that ABG gives a catchy title ("January Shuffle") but which, even on their own scurrilous terms, have nothing to do with Arena, a publicly traded company, or any alleged harm sustained by ABG. (*Id.* at ¶ 126).

ABG does not allege that the supposed "January Shuffle" caused Arena to be unable to make contractual payments to ABG or caused the breach of the ABG-Arena Licensing Agreement (to the contrary, ABG continues to allege in the proposed Second Amended Complaint that Arena "certainly had more than enough money" to pay ABG, *id.* at ¶ 12). Instead, ABG speculates, "on information and belief," that unspecified "siphoning of funds"[1] could make Arena "judgment-proof" with respect to ABG's disputed claims, *Id.* at ¶ 126, something ABG already argued at length in its October 15, 2024 Response Brief at 19. This "judgment-proofing" theory, based on events occurring long after the operative allegations in this case, supplies no basis to pierce the corporate veil. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996) (noting the relevant factor is "insolvency at the time of a

---

[1] Though Mr. Bhargava does not wish to debate the issue here, there is a reason ABG couches its reckless and defamatory siphoning allegations, which will likely be the subject of a Rule 11 motion someday, with "on information and belief" and "according to former Bhargava associates." Arena sustained a net loss of $89.9 million in 2021 and $70.9 million in 2022. Mr. Bhargava, through his company, invested in a distressed entity, and far from siphoning funds from it, his company has invested tens of millions of dollars to keep it afloat.

transaction"). But that has not stopped Plaintiff from attempting to plead it (*See Sec. Am. Compl.* at ¶¶ 122, 124—alleging that the termination of a merger in August 2024 and data from a November 2024 10-Q support piercing the veil for alleged breach of License Agreement occurring in January 2024).

Perhaps sensing that this "new information," is insufficient, ABG also seeks leave to repackage the allegations it already made in the First Amended Complaint. The proposed Second Amended Complaint alleges that Mr. Bhargava's wrongful actions include "breaching the Licensing Agreement and forcing its termination in January 2024, terminating Arena executives and unionized staff, splashing 5-hour ENERGY ads on SI web pages, and stealing Plaintiffs' intellectual property following the Licensing Agreement's termination." (*Sec. Am. Compl.* at ¶ 118). The First Amended Complaint likewise alleges that: "Bhargava developed a plan to sideline Levinsohn (then the CEO), cause Arena to breach its Licensing Agreement with ABG, and fire Arena's unionized staff," *id.* at ¶52; Bhargava improperly advertised 5-hour ENERGY on SI web pages, *id.* at ¶60; and Bhargava engaged in "interference" and "theft" of ABG's intellectual property rights, *id.* at ¶¶ 19-20 and 181. But now, ABG characterizes these recycled allegations as an attempt to drive down Arena's "share price to [Bhargava's] own advantage." (*Sec. Am. Compl.* at ¶ 118). ABG does not attempt to fill the logical void between putting ads for 5-hour ENERGY on SI web pages or allegedly stealing intellectual property and Arena's stock price, explain why this odd spin on its existing allegations did not occur to it before, or explain why Mr. Bhargava who, based on ABG's own allegations indirectly owned at least 40% of Arena at the time of these alleged actions (*id.* at ¶ 52), would want to drive Arena's stock price down and significantly impair the value of his own holdings.

Lastly, four months after completion of briefing, ABG unsuccessfully attempts to plug two of the glaring holes in its First Amended Complaint that Mr. Bhargava raised in his motion to dismiss. First, contrary to New York law, ABG attempted to plead tortious interference with the Minute Media contract without alleging that Minute Media ever breached the contract—indeed, by every indication, ABG has never declared a breach of that contract and continues to work with Minute Media to this day. ABG attempts to belatedly paper over this fatal defect by adding one sentence in the proposed Second Amended Complaint: "As a result of Defendants' improper actions, Minute Media was unable to fulfill the requirement in its licensing agreement with ABG-SI that Minute Media must maintain Digital Channels with respect to functionality." *Id.* at ¶ 208. ABG does not provide the Minute Media contract, quote the specific contract term at issue, or allege that it ever provided Minute Media a notice of default or declared a breach of contract.

Second, while contending that this unstated claim is already present in the First Amended Complaint (and while alleging in its veil piercing allegations that Mr. Bhargava is effectively a party to the ABG-Arena Licensing Agreement), ABG seeks leave to assert a claim that Mr.

February 24, 2025
Page 4

Bhargava tortiously interfered with the Licensing Agreement between Arena and ABG. As Mr. Bhargava pointed out in his Reply Memorandum in Support of his Motion to Dismiss the First Amended Complaint (Dkt. 89 at 9), when a defendant "has an 'economic interest' in an entity and [allegedly] interferes with an existing contractual relationship between the plaintiff and that entity," the plaintiff must allege that the defendant acted maliciously, fraudulently, or illegally. *VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, 2019 WL 4805771, at *23 (S.D.N.Y. Sept. 30, 2019) (quotation marks and citation omitted). Here, Mr. Bhargava has an economic interest in Arena because he is, through his company, a "significant stockholder in [Arena's] business." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406 (S.D.N.Y. 2009); *see, e.g.*, *Sec. Am. Compl.* at ¶ 25. Therefore, ABG is required to plead that Bhargava acted out of a malicious desire to harm ABG or used fraudulent or illegal means to induce Arena to breach the Licensing Agreement. *See, e.g.*, *Vekaria v. Mthree Corp. Consulting, Ltd.*, 2024 WL 4337542, at *15–16 (S.D.N.Y. Sept. 27, 2024) (dismissing claim when plaintiff did not plead malice, fraud, or illegality). ABG has not done so.

The proposed Second Amended Complaint should not be permitted because amendment would be futile. *See Aaron Richard Golub, Esq., P.C. v. Blum*, No. 23-CV-10102 (JSR), 2024 WL 137436 at *4 (S.D.N.Y. April 1, 2024)(refusing to grant leave to file second amended complaint where "plaintiffs were put on notice of the deficiencies with their initial complaint in defendants' first motion to dismiss but utterly failed to correct those deficiencies when plaintiffs filed their amended complaint"); *Nat'l Credit Union Admin. Bd. V. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018)("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first."). Here, Mr. Bhargava outlined his dismissal arguments in his May 31, 2024 letter to the Court, and ABG filed a First Amended Complaint that utterly failed to cure the defects in the original Complaint. The proposed Second Amended Complaint does not cure the defects either. Instead, the "new information"/allegations are not new, not specific, anonymous, legally irrelevant, and illogical. Further, the proposed Second Amended Complaint is untimely and prejudicial to Mr. Bhargava, as ABG waited until nearly four months after briefing was completed on Mr. Bhargava's pending motion to dismiss to raise this issue.

Respectfully submitted,

Joseph E. Viviano

JEV/jah

Cc:   All Counsel Of Record

560062